58 So.2d 188 (1952)
HAHN
v.
STATE.
Supreme Court of Florida, en Banc.
April 15, 1952.
Harry P. Johnson, Tavares, Scofield & Bradshaw, George W. Scofield and D.J. Bradshaw, all of Inverness, for appellant.
Richard W. Ervin, Atty. Gen., and Reeves Bowen, Asst. Atty. Gen., for appellee.
PARKS, Associate Justice.
On April 18, 1951 Wilson Hahn was indicted in the Circuit Court of Sumter County for first degree murder of Albert Phillips by shooting him with a pistol. Trial by jury was had on June 11-13 resulting in his *189 conviction of first-degree murder without recommendation. Motion for new trial was overruled and the death penalty was imposed by the Court. He brings this appeal and assigns numerous errors for reversal of the judgment.
Preliminary to the trial a motion to quash the indictment and a motion for change of venue were made, both of which were overruled. Errors are assigned attacking each of these rulings.
The motion to quash attacks the appointment by the State's Attorney, with the consent of the Court, of Mr. Carroll W. Fussell, a member of the Bar of Sumter County, as an assistant in the prosecution of the case. It charges that the appointment violated Sec. 27.18, F.S. 1949, F.S.A. and that Fussell was present in the Grand Jury room during their deliberations at the time they inquired into the charge against the defendant. It is, however, without allegations that he was present while they voted or that he urged or requested the finding of an indictment against the defendant. The approval of the appointment was within the discretion of the Circuit Judge. The motion was without merit and there was no error in overruling it. Miller v. State, 42 Fla. 266, 28 So. 208; White v. State, 121 Fla. 128, 163 So. 403; Hulst v. State, 123 Fla. 315, 166 So. 828; Holloman v. State, 140 Fla. 59, 191 So. 36.
The defendant entered his plea of not guilty on June 1. The motion for change of venue was not filed until June 7 although the case had been duly set for trial on June 11. Nothing of consequence is alleged to have occurred after June 1 and no cause was shown for failure to file the motion not less than 10 days before the trial date as required by Sec. 911.03, F.S. 1949, F.S.A. Moreover, its allegations of fact that defendant coud not receive a fair trial because of prejudice against him among the residents of Sumter County, if proven, were deficient in substance to sustain the motion. Finally, the ruling of the Court was attested by the qualification of a jury on the first day of the trial after examination of only 38 veniremen on voir dire. Of those challenged, 4 had fixed opinions, 1 was discharged by agreement of counsel, 5 because of their opposition to capital punishment, and 8 excused because of peremptory challenges by the defendant. In view of the insufficiency of the allegations of the motion and the readiness with which the jury was qualified, aside from the fact that it was filed too late, it seems clear that its grounds were without merit and the Court did not err in denying it. Patterson v. State, 157 Fla. 304, 25 So.2d 713; Ferguson v. State, 158 Fla. 345, 28 So.2d 427.
Under assignments included in questions 7 and 8 posed by appellant in his brief  did the Court's refusal to permit the recall of State witness, James Kimbrough, for further cross-examination, after the State had rested its case, to enable defendant to lay the predicate for impeachment of the witness constitute harmful error. In the course of the trial while the State was offering its evidence in chief the witness, Kimbrough, night policeman of Wildwood, an eyewitness to the slaying and the only person having seen and heard all of the altercation between the defendant and the deceased prior to and at the moment of the shooting, testified that the deceased Phillips at that moment was doing "nothing, he was just standing where he had been standing" and that he made no advance on defendant. Obviously, the chief purpose and tendency of this testimony was to prove that Hahn did not kill in self-defense. The witness was excused after cross-examination by defense counsel without laying the predicate for impeachment of this statement. Later while the defendant was putting on his case he attempted to prove by witness, Roscoe Hamilton, that Kimbrough on the return from taking defendant to jail at Tavares shortly after the shooting, had told him (Hamilton) that "when Phillips reached for his pocket, Hahn pulled a gun and started to shoot". Hamilton so testified in the absence of the jury in answer to the questioning of defense counsel. The State objected to the witness answering this question before the jury and the Court correctly sustained it because no predicate for impeachment had been laid. After further proceedings defense counsel requested the recall of Kimbrough for the purpose of asking him *190 whether he made the statement attributed to him by Hamilton. The Court denied the request but stated he could be recalled as his witness. This offer was declined. The request did not strictly comply with the practice for laying the predicate for impeachment but that was the purpose of defense counsel is clearly evident.
To make clear the materiality of impeachment and give perspective to the incident of the slaying preceding events involving the parties should be briefly recounted. Phillips became imbued with the idea that Hahn had enticed his wife away from him and broken up his home; that they planned to kill him for his life insurance. (The record is devoid of evidence that such had occurred other than as appears in Phillips' statements, obviously, based on hearsay.) There was testimony to the effect that on several occasions Phillips had sought out Hahn and accused him or threatened him. On one of them about a week or 10 days before the slaying he provoked and brought on an altercation exhibiting an open knife. Hahn testified that a week or 10 days prior Phillips had threatened to kill him if he crossed his path again. On the night of the slaying Hahn and Clardy, a friend, attended a picture show in Wildwood. At the conclusion of the picture Phillips who was also there left the theatre ahead of Hahn and stationed himself in the hall exit in the front part of the building. Clardy, who was reluctant to get involved, suggested to Hahn that he ask Kimbrough to take him home. Hahn, who had been informed by a friend that Phillips was outside with his hand in his pocket, came out with his gun in his hand and Phillips, standing against the wall with one arm behind his back, ordered him to "put up" the gun. Making no reply Hahn walked past him down the sidewalk for a distance of about 2 blocks looking for Kimbrough, who, at his call, joined him. He had hardly more than begun telling Kimbrough that it looked like Phillips was after him and was looking for trouble when he drove up in his car. Relating the incident Kimbrough, among other things, testified that about that time Phillips drove up in his car parking it at a point directly across the street from them, got out, and crossed to the sidewalk where they were standing; coming up to them in a loud voice he accused Hahn of having enticed his wife away from him and broken up his home and that he had been caught with her in the woods. Hahn denied this and replied that if Phillips lived long enough he would find out that he had not been with his wife. Phillips then accused Hahn of planning with his wife to kill him for his insurance and further that he had warned Hahn to stay out of town since he had threatened him; that the streets were not wide enough for both of them. Hahn replied that he would come to town when he wanted to and then "pulled his gun from his pocket and began shooting". In his defense Hahn testified that at the instant prior to the pulling of his gun from his pocket Phillips said "you G____ D____SOB" and put his hand in his pocket as if to draw a weapon and he thought he was reaching for a gun or a knife. Whereupon, grabbing unsuccessfully at Phillips' arm with his left hand and "stumbling sideways" he pulled his gun with his right hand and began shooting. He further testified that there was no doubt in his mind that it was Phillips' life or his own.
With this perspective it was crucial to defandant's case that he be permitted to recall Kimbrough to lay the predicate for controverting his statement already in evidence that at the instant of the shooting Phillips was "doing nothing, he was just standing where he had been standing". Other incidents, all provoked by Phillips, are related by the witnesses. A careful consideration of the record leads us to the conclusion that Phillips' following Hahn brought about and provoked the incident resulting in the slaying. Clearly it was not of Hahn's seeking. Moreover, Hahn, in view of the incidents testified to in the record including the several threats of Phillips, some of which are undisputed and others strongly corroborated, had good reason to believe that Phillips intended to kill him or do him great bodily harm.
So, in this state of the record the question is  was it harmful error for the trial Court to refuse defense counsel's request to recall Kimbrough for impeachment *191 purposes? Rules of practice and their employment in the conduct of trials are not inflexible. Their strict or technical enforcement cannot straight jacket the justice of the cause. Primarily, they are formulated and employed so that the Court may regulate and keep within legal bounds the general conduct of the trial. This Court has always recognized that a trial Court has wide latitude in regulating the conduct of trials in order that the administration of justice be speedily and fairly achieved in an orderly, dignified manner and befitting the gravity of the business in hand. In this function the trial Judge exercises the sound discretion with which he is vested. This discretion may be invoked and its exercise reasonably required for many reasons. It may be invoked when counsel in the stress of the trial overlooks or fails to offer proof of material matter or otherwise fails in his duty to his client in the conduct of his case. In a grave case, as here, where defendant's life was in jeopardy his ineptitude alone is enough. This discretion wisely used to the end that the justice of the cause be achieved should none the less impair the Judge's control of the proceedings of the trial. We have held that the right to recall witnesses to lay the predicate for impeachment is not absolute but such right rests in the discretion of the trial Court. Brown v. State, 40 Fla. 459, 25 So. 63; Bryant v. State, 117 Fla. 672, 158 So. 167; Johnson v. State, 55 Fla. 46, 46 So. 154.
Examination and cross-examination of Kimbrough was not unduly prolonged considering the fact that he was the only witness in the immediate presence of the defendant and the deceased who saw and heard the entire incident immediately prior to and at the time of the shooting. He was the night policeman or town marshal and his testimony, it may be assumed, had weight in the minds of the jury. If it had been shown that he had made the conflicting statement related by the witness Hamilton and if believed by the jury, in the light of the entire record the trial could have reasonably resulted in a verdict of not guilty or of a lessor degree of guilt.
We hold that the trial Court should have exercised its discretion and permitted the recall of Kimbrough on the request of defense counsel for the purpose of examining him to lay a predicate for impeachment as requested. This failure was harmful error for which the cause must be reversed for new trial. We may, also, add that the Attorney General in his brief makes the following comment respecting the matter:
"Inasmuch as the appellant's life was at stake (he received the death penalty), and inasmuch as there is a possibility that Hamilton's testimony might have tipped the scales in the appellant's favor and resulted in a recommendation for mercy, or a conviction of second degree murder or manslaughter, or an acquittal, we think that the appellant should have been permitted to recall Kimbrough and cross-examine him for the purpose of laying a predicate for Hamilton's impeaching testimony."
Other assignments are not considered.
Reversed.
SEBRING, C.J., and TERRELL, CHAPMAN, HOBSON and MATHEWS, JJ., concur.
THOMAS, J., agrees to conclusion.
THOMAS, Justice.
I agree to the conclusion, only, because of the obligation imposed on the Court by Section 924.32(2), Florida Statutes 1941, and F.S.A.