62 So.2d 892 (1953)
COCO
v.
STATE.
Supreme Court of Florida, en Banc.
January 20, 1953.
Whitaker Brothers, Tampa, and Hubbard & Carr, Miami, for appellant.
Richard W. Ervin, Atty. Gen., and William A. O'Bryan, Asst. Atty. Gen., for appellee.
HOBSON, Chief Justice.
Appellant (defendant below) was charged with first degree murder in and by an indictment returned by the Grand Jury of Dade County, Florida, on March 29, 1951. He entered a plea of not guilty and the case was then tried before a jury which trial began on June 8, 1951. At the conclusion of the trial the jury returned a verdict of guilty of murder in the second *893 degree. Counsel for appellant in due course filed a motion for a new trial, which motion was denied. On the 18th day of June, 1951, the trial judge entered an order adjudging the defendant guilty of the offense of murder in the second degree and pronounced judgment and sentence in the following language:
"It Is, Therefore, the judgment of the law and the sentence of this Court that you, Edward Coco, also known as Eddie Coco, be, and you are hereby sentenced to confinement in the State Prison at hard labor for and during the term or period of your natural life."
Notice of appeal was filed on June 19, 1951.
Numerous assignments of error were filed by the appellant and predicated upon said assignments of error counsel for appellant posed several questions. We shall deal with but two of these questions, namely questions numbered 1 and 5. These questions read respectively as follows:
1. "Where the testimony utterly fails to show any motive of any kind on the part of the defendant to take the life of deceased or to do him any bodily harm at all; and where the testimony of only one witness purported to place the defendant at the scene of the homicide at the time of the fatal shooting, and this witness was a long-time friend and employee of the deceased, and the testimony of this witness identifying the defendant is not only uncorroborated, but is weak, uncertain and unconvincing, and shows it is based upon guesswork and conjecture and bears the earmarks of falsity and is thoroughly impeached by the testimony of a white lady, testifying as a State witness, is not such evidence legally insufficient to support a verdict of guilty and do not the ends of justice require the granting of a new trial?"
5. "Where the State places upon the stand a finger-print expert who testifies upon direct examination minutely and in detail to lifting finger-prints from the pistol which was admitted in evidence upon the theory that it was the murder weapon, and who testified as to comparison of finger-prints which had been admitted in evidence, is it not prejudicial error for the trial judge to deny defendant's counsel the right on cross examination, to ask said expert if he did not, immediately after lifting said finger-prints from said weapon, compare the same with the finger-prints of defendant, and from such comparison at said time find that the same did not correspond, and if he did not at said time, from such comparison, find such difference and divergence in said finger-prints as to cause him, as such expert, to conclude that the finger-prints which he had lifted from said weapon were not defendant's and had not been made by defendant?"
It is the contention of counsel for appellant that both of these questions which were answered in the negative by the trial judge should have been answered in the affirmative. It is the position of counsel for the State that if errors were committed in the trial of this case no one of the alleged errors was harmful or prejudicial to appellant and that he did receive a fair and impartial trial. However, upon a careful consideration of the record as a whole, we are forced to a contrary view.
The Attorney General takes the position that Question No. 1 as posed by counsel for appellant is not supported by the record except insofar as it states that there was no showing of motive for the crime and that there was apparently only one witness who could place the appellant at the scene of the homicide at the time of the fatal shooting. It is the contention of the Attorney General with reference to Question No. 5 that the witness Lieut. Bruce Simmons, although he was supervisor of the Identification Bureau, Miami Beach Police Department, was placed upon the stand and gave direct testimony for the sole purpose of supplying a clear, definite and certain identification of State's Exhibit No. 8 and of showing that State's Exhibit No. 8 and State's Exhibit No. 3 had been sent to the Federal Bureau of Identification in Washington, D.C., and that Lieut. Simmons' testimony was given as a predicate for the subsequent testimony of the fingerprint expert *894 or examiner Ronald G. Wittmus, who was an employee of the Federal Bureau of Identification. Counsel for the State argues that witness Simmons "in no way testified about a comparison made by himself of the finger-prints on State's Exhibit 3 and State's Exhibit 8, nor did he testify as to any opinion he might have reached from such a comparison."
A careful and studied examination of the transcript of record discloses that State's Exhibit No. 1-L for identification was the file copy of the Miami Beach Police Department's State's Exhibit No. 8. Said Exhibit was a copy of fingerprints taken from the pistol by witness Bruce Simmons, according to his own testimony, while State's Exhibit No. 3 was the Washington copy of alleged fingerprints of Coco taken by Officer Gorham on February 1st following the homicide.
Witness Simmons not only testified in detail on direct examination as to the manner in which he lifted the fingerprints from the revolver but he also testified as to what he did with them and he further testified to a comparison between the two exhibits. I quote from the record:
"Q. (By Mr. DuVal) I show you State's Exhibit No. 1-L for identification, and State's Exhibit No. 3, and ask you what comparison there is in the two? A. Well, those are both finger-print cards containing the finger-prints of the same person, Eddie Coco."
Counsel for appellant, at the beginning of his cross-examination of Lieut. Simmons, started to ask a question but got no further than the utterance of the following words: "You made a comparison * * *", when the State's attorney interposed an objection. Whereupon the court excused the jury from the court room and after argument of counsel sustained the objection made by the State's attorney on the ground that counsel for appellant did not have the right to cross-examine the witness as he was preparing to do because it was improper cross-examination. He obviously held that there was no direct testimony given by the witness which would justify the proposed cross-examination and that counsel might use Lieut. Simmons as appellant's own witness in order to present to the jury the testimony which he sought to elicit upon cross-examination. At this juncture it is deemed appropriate to state just what counsel for appellant intended to bring out by his cross-examination. Counsel proffered "to show, if permitted to examine the witness, that under date of February 1, 1951, Lieut. Bruce Simmons wrote a communication, directed to the Chief of Police as follows: `At 9 o'clock a.m. this date, Detective William Murray brought a white kitchen-type garbage can to the identification bureau which contained a blue steel Colt pocket positive revolver with a 32 caliber 2 1/2 inch barrel, No. 75611. I have photographed same, as it lay in the garbage can. I checked it for latent prints and found two legible whirls with left delta shown on the cylinder. These were lifted and they do not compare with those of Eddie Coco, our No. A-17210. Further examination of the revolver showed that there were no cartridges in the cylinder and that the physical condition of the inside of the barrel, lack of burnt powder smell, absence of burnt power (sic) at the muzzle, breech or face of the cylinder, indicates that the revolver has not been fired since last cleaning. However, a ballistics test will establish whether it was used in this case. The lifted prints do not compare with those of Rosalie Coco, alias Plass, our No. A-17212. Respectfully submitted, Lt. Bruce Simmons." (Italics supplied.)
It is our conclusion that the trial judge committed error in not allowing the cross-examination because we are convinced that it was proper cross-examination and that the direct testimony of Lieut. Simmons in which he sketched in part but not in toto what he did with  what use he made of  the fingerprints and his testimony hereinabove delineated in which he did make a comparison and testified that both fingerprint cards contained the fingerprints of the same person, Eddie Coco, justified the proposed cross-examination.
It is too well settled to need citation of authority that a fair and full cross-examination of a witness upon the subjects opened by the direct examination is an absolute right, as distinguished from a privilege, *895 which must always be accorded to the person against whom the witness is called and this is particularly true in a criminal case such as this wherein the defendant is charged with the crime of murder in the first degree. For the sake of emphasis we make the observation that at the time of the proposed cross-examination appellant stood in jeopardy of being convicted of such capital offense. Cross-examination of a witness upon the subjects covered in his direct examination is an invaluable right and when it is denied to him it cannot be said that such ruling does not constitute harmful and fatal error. Moreover, the right of cross-examination stems from the constitutional guaranty that an accused person shall have the right to be confronted by his accusers. We quote with approbation from the Supreme Court of Maine in the case of State v. Crooker, 123 Me. 310, 122 A. 865, 33 A.L.R. 821:
"The constitutional right of confrontation does not mean merely that witnesses are to be made visible to the accused, but imports the constitutional privilege to cross-examine them. * * *
"The constitutional right of cross-examination is not a mere privilege to be granted or withheld at the discretion of the court, but a substantive right possessed by the accused".
It is stated in 58 Am.Jur., page 350, Section 629, and we quote with approval:
"* * * it is error for the trial court to refuse to permit the cross-examination of a witness to extend to all matters germane to the direct examination, for such a cross-examination is a matter of absolute right and is not a mere privilege. * * * if a question is within the scope of direct examination it is not objectionable on cross-examination because it tends to establish a defense to the action."
It is further stated in the same work in Section 632, page 352:
"* * * when the direct examination opens a general subject, the cross-examination may go into any phase, and may not be restricted to mere parts which constitute a unity, or to the specific facts developed by the direct examination. Cross-examination should always be allowed relative to the details of an event or transaction a portion only of which has been testified to on direct examination. As has been stated, cross-examination is not confined to the identical details testified to in chief, but extends to its entire subject matter, and to all matters that may modify, supplement, contradict, rebut or make clearer the facts testified to in chief by the witness on cross-examination."
The rule which prohibits proof of defensive matter upon cross-examination never applies where by such cross-examination "the adverse party simply seeks to disprove, weaken, or modify the case against him which the witness himself has made." Resurrection Gold Min. Co. v. Fortune Gold Min. Co., 8 Cir., 129 F. 668, 676. See also Wendt v. Chicago, St. P., M. & O. Ry. Co., 4 S.D. 476, 484, 57 N.W. 226; Jackson v. Feather River & Gibsonville W. Co., 14 Cal. 19, 24.
It is contended by counsel for the State that if error was committed by the trial judge in refusing to allow the cross-examination which was sought to be made by counsel for appellant it was not harmful error because the State established the identity of Edward Coco by the testimony of an eyewitness, Herbert Williams, a colored man who worked for the deceased, Johnnie Smith. An examination of the testimony given by Williams both on direct and cross-examination convinces us that although it might be said standing alone it was sufficient, if believed by the jury to establish the identity of Eddie Coco as the person who shot and killed Johnnie Smith, such testimony was not of the strong character required by the law in a criminal case and its weakness, uncertainty and the conflicts therein would have been all the more obvious and discrediting to his testimony, had Lieut. Simmons been permitted to testify on cross-examination, and if he had testified as counsel for appellant stated to the trial court he would have testified, which we must assume he would have done.
*896 The question of the identity of Eddie Coco as the slayer of Johnnie Smith was the most vital one presented to the jury in this case. The testimony on the question of identity might well have been determined differently, had the cross-examination of Simmons been allowed for there would have been a conflict in the testimony on this most important query which would have been of inestimable value to appellant. Our thought in this connection is greatly strengthened, if indeed it is not completely upheld, by the admission of the Attorney General in his brief to the effect that, and we quote:
"If the proffer may be taken as true, Lt. Simmons would have been a most valuable witness for the defense. He was qualified as a finger-print identification expert. By the terms of the proffer, his expert opinion was in direct conflict with the opinion of the Federal Bureau of Identification expert, Ronald G. Wittmus. * * * The decision of the defense not to call this valuable witness, who was so readily available, must certainly have been the result of carefully reflected trial strategy. We can only conjecture or surmise what the outcome would have been if he had been called." (Italics supplied.)
We are constrained to paraphrase the last sentence of the above quotation and say we can only conjecture or surmise what the outcome would have been had the appellant been granted, rather than denied, his inalienable right of cross-examination.
The line of cross-examination which counsel for appellant was attempting to initiate and pursue should have been permitted either for the purpose of showing fully and completely what the witness did with, and in connection with, the taking of the fingerprints, including the making of the report, to the end that he might have been impeached either in connection with his direct testimony to the effect that both fingerprint cards contained the fingerprints of the same person, to wit: Eddie Coco, or for the purpose of laying a predicate for impeaching the witness himself by the production of the report which it is contended he did make to the Chief of Police in the event he denied having made such a report containing a statement contrary to his direct testimony.
In the recent case of Hahn v. State, Fla., 58 So.2d 188, we had the almost identical question before us and without equivocation we held that it was fatal error for the trial court to deny defense counsel the right of cross-examination for the purpose of laying a predicate for impeachment. The vital question in that case was not one of identity but was whether the defendant killed the deceased while acting in self-defense. However, the analogy between that case and the instant suit is so clear-cut as to be unquestioned authority for a reversal herein.
Moreover, the distinction between the two criminal actions consists of a difference which is more favorable to a reversal in the instant, than in the Hahn v. State, case. The propriety of recalling a witness for the State for further cross-examination after the State has rested its case for the purpose of laying a predicate for impeachment is a matter which rests in the sound judicial discretion of the court. On the other hand, the right of a full and fair cross-examination of a witness upon subjects the door to which is pushed ajar on the examination in chief is an absolute right which has as its genesis Section 11 of the Florida Declaration of Rights. This Section provides that an accused shall have the right "to meet the witnesses against him face to face" in open court before an impartial jury.
It appears to be the position of counsel for the State that if there be an eyewitness to the commission of a crime, however weak his testimony might be, such fact is ample justification for this Court to ignore the absolute right of cross-examination (which our Declaration of Rights purports) of other witnesses who have testified upon, as in this case, the vital question of identity of the accused as the perpetrator of the heinous crime of murder. This contention is so patently, egregiously erroneous as to require no authority to point out its obliquity.
Controversy has arisen as to whether State's Exhibit No. 1-L for identification was actually the Miami Beach Police Department's *897 copy of State's Exhibit No. 8 which unquestionably contained the fingerprints that were lifted from the pistol by the witness Lieut. Bruce Simmons or whether said State's Exhibit 1-L for identification was a fingerprint card containing the known fingerprints of Eddie Coco which had for an indefinite and unexplained period of time been in the file of the Miami Beach Police Department. The record does not contain State's Exhibit 1-L for identification. We have endeavored to secure from Hon. E.B. Leatherman, Clerk of the Circuit Court of the Eleventh Judicial Circuit, State's Exhibit 1-L for identification but have been informed that since it was not actually introduced in evidence it was not retained among the Clerk's records. We are forced to look to the testimony of Lieut. Bruce Simmons in order to determine just what said exhibit actually was. The writer, on several occasions, has carefully studied the testimony of Lieut. Simmons as it appears in the transcript of record and can reach no other conclusion but that State's Exhibit No. 1-L for identification was the file copy of the Miami Beach Police Department's State Exhibit No. 8 which contained the fingerprints that were lifted from the pistol by Lieut. Simmons.
However, in order that our position may be crystal clear, we wish it to be understood that in our opinion harmful and reversible error was committed in the trial court when the cross-examination sought to be made was denied counsel for appellant, regardless of what State's Exhibit No. 1-L for identification may have been. We hold this view because without consideration being given to the comparison made by Lieut. Simmons between State's Exhibit No. 1-L for identification and State's Exhibit No. 3 the cross-examination was proper and should have been permitted because Lieut. Simmons opened the door to such cross-examination when he testified minutely as to just what he did in the process of lifting the fingerprints from the pistol and also testified as to what he did with, and what use he made of, the self-same fingerprints. He purportedly gave the jury a complete picture of his every act from the time he started the technical process of removing the fingerprints from the pistol on down to having sent to the F.B.I. at Washington those fingerprints and the fingerprints of one Edward Coco taken by Officer Gorham on February 1st (State's Exhibit No. 3) as well as a duplicate copy of either State's Exhibit No. 8 or, if we are wrong in our appraisal of the testimony, that which he sent was a copy of the Miami Beach Police Department's fingerprint card of Edward Coco which had been on file with said Police Department. After Lieut. Simmons testified minutely as to what he did with the fingerprints which he lifted from the pistol defense counsel certainly should have been accorded the constitutional right of cross-examination to determine whether he had done anything else with said fingerprints and had the right to find out everything he did with the fingerprints since he had told on direct examination some, but not all, of the things which he did with and concerning said fingerprints.
It follows that our judgment is one of reversal.
Reversed for a new trial.
ROBERTS, MATHEWS and DREW, JJ., concur.
TERRELL, THOMAS and SEBRING, JJ., dissent.