700 So.2d 5 (1997)
Raul VAZQUEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 96-0072.
District Court of Appeal of Florida, Fourth District.
July 2, 1997.
Order Certifying Question on Denial of Rehearing September 24, 1997.
*6 Richard L. Jorandby, Public Defender, and Steven H. Malone, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Diana K. Bock, Assistant Attorney General, Tampa, for appellee.
FARMER, Judge.
In this case where entrapment was a defense, the trial judge refused to reopen cross examination of a detective for the purpose of admitting additional parts of tape recordings relating to dealings with a confidential informant. *7 Defendant also argues that the standard jury instruction on entrapment failed, under the facts of this case, to give a fully accurate instruction on the current state of the law. We reverse.
Defendant was charged with trafficking in cocaine after he sold the drug to an informant. A number of conversations leading up to this transaction were recorded and adduced as evidence at trial. Defendant claimed that, to persuade him to sell the informant cocaine, the informant offered to give him a substantial amount of marijuana for free. He also alleged, and evidence was adduced at trial to support the contention, that he had not been in the business of selling drugs for a substantial number of years before being approached by the informant.

I. Re-Opening Evidence for Cross-Examination
Defendant argues that the trial judge erred in refusing to allow him to reopen cross-examination of the lead detective for the purpose of introducing into evidence additional tape recordings of the conversations between the contact and the informant. The state argues that defendant could have called the detective as his own witness, and thereby offered the tapes into evidence. He did not do so because he did not wish to assert a defense and thus lose the right to open and close final argument. See Fla. R.Crim. P. 3.250.
In Louisy v. State, 667 So.2d 972 (Fla. 4th DCA 1996), we reversed a trial court's refusal to reopen the defense to present crucial evidence, saying that:
"Although the decision to allow a case to be reopened involves sound judicial discretion not usually interfered with on the appellate level [c.o.] a denial will be reversed where the request is timely made and the jury will be deprived of evidence which might have had a significant impact upon the issues to be resolved. Delgado v. State, 573 So.2d 83, 86 (Fla. 2d DCA 1990)...."
667 So.2d at 974. The rationale behind Louisy and other such cases is that in some circumstances the refusal to re-open a case is "to enforce a rule of procedure almost to the point of a denial of justice." Steffanos v. State, 80 Fla. 309, 86 So. 204, 205 (1920); see also State v. Ellis, 491 So.2d 1296, 1297 (Fla. 3d DCA 1986). The state argues in effect that there is no denial of justice where the defendant could so easily have adduced the same evidence during his own defense.
In Hahn v. State, 58 So.2d 188 (Fla.1952), where the charge was first degree murder and defendant claimed self-defense, the state called a witness who testified that the victim had not threatened defendant just before the killing. Although defendant cross-examined the witness, he failed to lay the necessary foundation for impeachment with a hearsay statement he had intended to introduce through another witness. When counsel later realized the error, he unsuccessfully sought to recall the state's witness to lay the proper foundation. After the court offered to allow defense counsel to call the witness as his own witness, counsel declined the offer. The supreme court held that the trial judge had abused his discretion in refusing to allow defendant to recall the witness, saying that:
"Rules of practice and their employment in the conduct of trials are not inflexible. Their strict or technical enforcement cannot straight jacket the justice of the cause. Primarily, they are formulated and employed so that the Court may regulate and keep within legal bounds the general conduct of the trial. This Court has always recognized that a trial Court has wide latitude in regulating the conduct of trials in order that the administration of justice be speedily and fairly achieved in an orderly, dignified manner and befitting the gravity of the business in hand. In this function the trial Judge exercises the sound discretion with which he is vested. This discretion may be invoked and its exercise reasonably required for many reasons. It may be invoked when counsel in the stress of trial overlooks or fails to offer proof of a material matter or otherwise fails in his duty to his client in the conduct of his case. In a grave case, as here, where defendant's life was in jeopardy his ineptitude alone is enough." *8 58 So.2d at 191. Aside from the fact that the charges here do not involve a capital offense, it is difficult to find any meaningful difference with Hahn.

The distinction between cross examination of a state witness and calling the same person as a defense witness to lay a predicate for a defensive matter was also the basis for the decision in Coco v. State, 62 So.2d 892 (Fla.1953). There, defendant was also charged with first degree murder, but the jury ultimately convicted him of the lesser included offense of second degree murder. The state had called a police officer to authenticate two fingerprint cards as a predicate for later testimony of the state's fingerprint expert. On cross-examination, defense counsel sought to question the officer regarding a comparison made between the fingerprints on the murder weapon and defendant's fingerprints. The state objected, and the trial court sustained the objection, ruling that the cross-examination exceeded the scope of direct. More importantly for our purposes, in order to present the same testimony to the jury, the trial judge felt that defense counsel could call the witness as defendant's own. In reversing the supreme court stated that:
"In the recent case of Hahn v. State [c.o.] we had the almost identical question before us and without equivocation we held that it was fatal error for the trial court to deny defense counsel the right of cross-examination for the purpose of laying a predicate for impeachment. The vital question in that case was not one of identity but was whether the defendant killed the deceased while acting in self-defense. However, the analogy between that case and the instant suit is so clear-cut as to be unquestioned authority for a reversal herein.
"Moreover, the distinction between the two criminal actions consists of a difference which is more favorable to a reversal in the instant, than in the Hahn v. State, case. The propriety of recalling a witness for the State for further cross-examination after the State has rested its case for the purpose of laying a predicate for impeachment is a matter which rests in the sound judicial discretion of the court. On the other hand, the right of a full and fair cross-examination of a witness upon subjects the door to which is pushed ajar on the examination in chief is an absolute right which has as its genesis Section 11 of the Florida Declaration of Rights. This Section provides that an accused shall have the right `to meet the witnesses against him face to face' in open court before an impartial jury."
62 So.2d at 896.[1] In our opinion, the circumstances in Coco are essentially identical to this case. They involve the defendant's right to introduce a defensive matter through cross-examination, rather than by direct examination in his own case. In other words, although the court has discretion in determining whether a case should be re-opened, under Hahn and Coco this discretion is abused when it touches upon the right to cross-examination that has its purpose the weakening of the testimony given by the witness on direct examination by the state.
There is one difference between this case and Coco, however, but it strengthens defendant's argument. It involves the rule of completeness, which allows an adverse partyat the time a portion of a writing or recorded statement is introducedto have another portion or another statement or writing introduced that should, in fairness, be considered contemporaneously. § 90.108, Fla. Stat. (1995). It has thus been noted that:
"If counsel for the adverse party does not seek to invoke section 90.108 at the time the writing or document is offered, the provision may not be utilized during cross-examination or during the party's own case. However, section 90.108 does not prohibit evidence of the remainder of the writing or document; the evidence would have to be subjected to proper cross-examination or meet the usual test of admissibility if offered during counsel's case."
*9 Charles W. Ehrhardt, FLORIDA EVIDENCE § 108.1 at 34 (1995). Despite this, it has generally been held that the rule of completeness allows the admission of otherwise inadmissible evidence during cross-examination, if fairness so requires.
Thus, in Christopher v. State, 583 So.2d 642 (Fla.1991), the court rejected the state's argument that, because statements sought to be admitted on cross-examination were hearsay, they were inadmissible, the court explaining as follows:
"When the state offers in evidence a part of a confession or admission against interest, the defendant is entitled to bring out on cross-examination the entire confession or admission. Louette v. State, 152 Fla. 495, 12 So.2d 168 (1943). In Eberhardt v. State, 550 So.2d 102, 105 (Fla. 1st DCA 1989), review denied, 560 So.2d 234 (Fla. 1990), the rule was applied as follows:
`Because portions of the defendant's conversation with the officer were admitted on direct examination, the rule of completeness generally allows admission of the balance of the conversation as well as other related conversations that in fairness are necessary for the jury to accurately perceive the whole context of what has transpired between the two. Ehrhardt, Florida Evidence, § 108.1 (2d Ed.1984). Once the officer testified in the state's case-in-chief about one portion of Eberhardt's statements to him, the court erred in sustaining the state's hearsay objection for the reason that his statements he was `high' or intoxicated were self serving. Heathcoat v. State, 430 So.2d 945 (Fla. 2d DCA), aff'd, 442 So.2d 955 (Fla.1983).'"
583 So.2d at 646. Again, we find this rationale directly applicable to the present case.
When entrapment is an issue, there are essentially two elements involved: whether the police or one of their agents induced the defendant to commit the crime charged, and whether the defendant was predisposed to commit the crime anyway. Munoz v. State, 629 So.2d 90 (Fla.1993). The tape sought to be admitted was one of many conversations between the defendant and the informant. It is thus indisputably relevant to the defense of entrapment, particularly in light of the statement on the tape that the contact hadn't seen defendant in a long time, and that the informant would let defendant "have" the marijuana. We therefore conclude that the rule of completeness is directly applicable.
Thus, because the tape was a proper subject for cross-examination under the rule of completeness, Hahn and Coco even more strongly required the trial judge to permit cross-examination to be reopened to allow their admission during the state's case. Under the holdings in those cases, it does not matter that the same evidence could have been admitted in the defendant's own case, as long as it was in the nature of impeachment or weakening of the state's direct testimony.
Moreover, in light of the evidence in this case, we can not say that exclusion of the tape was harmless. First, the tape on which the informant said he would "give" defendant the marijuana was crucial to defendant's theory of the case. While there were a number of other tapes that indicated that the informant was going to sell the marijuana to defendant, such conflicts are the very purpose of trial by jury. Munoz 629 So.2d at 100 ("Such direction is consistent with the subjective evaluation of entrapment because the two factual issues above ordinarily present questions of disputed facts to be submitted to the jury as the trier of fact."). And while it is for the trial judge to determine in the first instance whether there is sufficient evidence to allow the defense of entrapment to go to the jury, we cannot say on this record that even with the omitted evidence having been included that the evidence was clearly insufficient.
We stress that we are not making any decision as to the sufficiency of the evidence to support defendant's entrapment theory. In fact, we note that the evidence of an inducement with an offer of an illegal drug would seem to negate defendant's allegation that he was not predisposed to commit the crime. At the same time, however, we understand defendant to claim that the informant was offering a substantial sum of money *10 significantly greater than what defendant might otherwise have realized from a sale of the cocaine. In other words, if the jury believed that the informant was offering free marijuana, a jury might find that the value of the marijuana served as the inducement. We leave all of this, however, to the trial judge and, if sufficient, to the jury to sort out in the retrial. We merely hold for now that, under Hahn and Coco, it was error to deny defendant the opportunity to re-open the cross-examination to introduce the additional tape recordings.

II. Jury Instruction on Entrapment
Defendant also argues that the trial judge erred in giving the standard jury instruction on entrapment, contending that part of the instruction addressing predisposition is now incorrect in light of our supreme court's recent opinion in Munoz v. State, 629 So.2d 90 (Fla.1993).[2] The pertinent text of the current standard jury instruction on entrapment is as follows:
"[Defendant] was entrapped if
1. he was, for the purpose of obtaining evidence of the commission of a crime, induced or encouraged to engage in conduct constituting the crime of [crime charged], and
2. he engaged in such conduct as the direct result of such inducement or encouragement, and
...
4. the person who induced or encouraged him employed methods of persuasion or inducement which created a substantial risk that the crime would be committed by a person other than one who was ready to commit it, and
5. [Defendant] was not a person who was ready to commit the crime.
It is not entrapment if [defendant] had the predisposition to commit the [crime charged]. [Defendant] had the predisposition if before any law enforcement officer or person acting for the officer persuaded, induced, or lured [defendant], he had a readiness or willingness to commit [crime charged] if the opportunity presented itself.
...

"On the issue of entrapment, the defendant must prove to you by a preponderance of the evidence that his criminal conduct occurred as a result of entrapment." [e.s.]
Fla. Std. Jury Instr. (Crim.) 39a-39b (1989). Before the adoption of this amended instruction in 1989, the final paragraph of the standard instruction on entrapment had read: "On the issue of entrapment, the State must convince you beyond a reasonable doubt that the defendant was not entrapped." When the drafting committee transmitted the proposed new instruction to the court, it specifically called the court's attention to this change in the instruction on burden of proof for entrapment. In re Standard Jury Instr. in Criminal Cases, 543 So.2d 1205 (Fla. 1989). The court adopted the change without comment, however.[3]
Entrapment as a theory of defense originated in Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). The theory adopted came to be called the "subjective" theory of entrapment, and there was general agreement that it involved two separate elements: "inducement" and "predisposition of the accused to commit the crime." Sherman v. United States, 356 U.S. 369, 78 *11 S.Ct. 819, 2 L.Ed.2d 848 (1958). In Cruz v. State, 465 So.2d 516 (Fla.), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985), the Florida Supreme Court specifically rejected the subjective test for entrapment, however, and adopted instead the basic principles of the "objective" standard of entrapment.
When the legislature enacted section 777.201 in 1987, it overruled Cruz to the extent that Cruz was not founded on a constitutional basis, and specifically adopted the subjective test for entrapment as the substantive law in Florida. In Herrera v. State, 594 So.2d 275 (Fla.1992), the court considered a certified question from this court as to whether section 777.201 unconstitutionally shifted the burden of proof to the defendant to prove entrapment.[4] The court held that the statute was not unconstitutional on that ground, explaining as follows:
"Herrera argues that this Court's decisions on previous versions of the entrapment instruction, e.g., State v. Wheeler, 468 So.2d 978 (Fla.1985), demonstrate that the new instruction and subsection 777.201(2) violate the due process clauses of the United States and Florida Constitutions. The State, on the other hand, contends that the instruction and statute are constitutional because they shift only the burden of persuasion of an affirmative defense, not the burden of proving the elements of the crime charged and the defendant's guilt. The two district courts that have considered this issue have agreed with the State. E.g., Krajewski v. State, 587 So.2d 1175 (Fla. 4th DCA 1991); Gonzalez v. State, 571 So.2d 1346 (Fla. 3d DCA 1990), review denied, 584 So.2d 998 (Fla.1991). We do likewise.
"Entrapment is a judicially created affirmative defense designed to prevent the government from contending a defendant `is guilty of a crime where the government officials are the instigators of his conduct.' Sorrells v. United States, 287 U.S. 435, 452, 53 S.Ct. 210, 216, 77 L.Ed. 413 (1932). To this end, `[t]he predisposition and criminal design of the defendant are relevant.' Id. at 451, 53 S.Ct. at 216. If the defendant `is a person otherwise innocent whom the government is seeking to punish for an alleged offense which is the product of the creative activity of its own officials .... common justice requires that the accused be permitted to prove it.' Id. Thus, we have defined the `essential element of the defense of entrapment' as `the absence of a predisposition of the defendant to commit the offense.' State v. Dickinson, 370 So.2d 762, 763 (Fla.1979). Subsection 777.201(1) now provides that lack of predisposition is an element of the defense.
"Over the years Florida courts have gone back and forth on which side must produce evidence regarding the defendant's having been entrapped. Some cases hold that defendants must show entrapment by proving their lack of predisposition toward criminal activity.... Other cases have held that the State must disprove entrapment by showing the defendant's predisposition to commit the offense.... Subsection 777.201(2) evidences the legislature's intent that the defendant should prove entrapment instead of requiring the State to disprove it."
594 So.2d at 277. After noting that the burden of proving the elements of a crime may not, under the Due Process Clause, be shifted to the defendant, Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the court held:
"For the first time the State, through the legislature, has decided that the burden is on defendants claiming entrapment to prove that they were entrapped. § 777.201(2). We hold that allocating this burden to a defendant is not unconstitutional. Cf. Patterson [v. New York, 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977)] (the Court refused `to adopt as a constitutional imperative, operative countrywide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of the accused' because `[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required.')

*12 "As stated earlier, the lack of predisposition to commit the crime charged is an essential element of the defense of entrapment. The predisposition to commit a crime, however, is not the same as the intent to commit that crime. As explained by the New Jersey Supreme Court in its consideration of this issue, `predisposition is not the same as mens rea. The former involves the defendant's character and criminal inclinations; the latter involves the defendant's state of mind while carrying out the allegedly criminal act.' State v. Rockholt, 96 N.J. 570, 476 A.2d 1236, 1242 (1984). Requiring a defendant to show lack of predisposition does not relieve the State of its burden to prove that the defendant committed the crime charged."
594 So.2d at 278. Thus, the court explicitly recognized that section 777.201 was not unconstitutional in requiring a defendant to prove lack of predisposition to commit the crime charged.
Exactly two months after Herrera was decided by the Florida Supreme Court, the United States Supreme Court handed down its own entrapment decision, which also addressed the defendant's burden of proof in establishing this defense. In Jacobson v. United States, 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992), the Court set aside a conviction upon a conclusion that the defendant was entrapped as a matter of law. The Court said:
"In their zeal to enforce the law, however, Government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute. [c.o.] Where the Government has induced an individual to break the law and the defense of entrapment is at issue, as it was in this case, the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents.2" [e.s.]
2 "Inducement is not at issue in this case. The Government does not dispute that it induced petitioner to commit the crime. The sole issue is whether the Government carried its burden of proving that petitioner was predisposed to violate the law before the Government intervened. The dissent is mistaken in claiming that this is an innovation in entrapment law and in suggesting that the Government's conduct prior to the moment of solicitation is irrelevant. See post, at 1544-1545. The Court rejected these arguments six decades ago in Sorrells.... Indeed, the proposition that the accused must be predisposed prior to contact with law enforcement officers is so firmly established that the Government conceded the point at oral argument, submitting that the evidence it developed during the course of its investigation was probative because it indicated petitioner's state of mind prior to the commencement of the Government's investigation." [e.s.]
503 U.S. at 548-549, 112 S.Ct. at 1540. Hence, under Jacobson it is the prosecution rather than the defendant that has the burden of proving predisposition beyond a reasonable doubt.
In Munoz v. State, 629 So.2d 90 (1993), where the court next confronted the issue, the court faced conflicting decisions among the district courts of appeal as to whether section 777.201 had abolished objective entrapment in Florida. It began by noting that its previous decisions, coupled with the enactment of section 777.201, had created substantial uncertainty. Its basic holding in Munoz is that while the legislature did in fact eliminate objective entrapment, the legislature could not prohibit the judiciary from reviewing the application of entrapment in any individual case for possible violations under the Due Process Clause; and, further, that the courts have the power to conclude in any case that entrapment was established as a matter of law.
During the course of its opinion in Munoz, the court canvassed the history of entrapment in both supreme courts. The court summarized the federal holding on entrapment thus:
"In summary, under the subjective test set forth by the United States Supreme Court, once a defendant raises entrapment as a defense, the defendant has the burden to establish that the government induced the defendant to commit the offense charged. However, once that burden is met, the burden shifts to the government to establish the defendant's predisposition to commit the offense. [c.o.] In proving a defendant's predisposition, the government *13 must establish that the defendant was predisposed to commit the offense both prior to and independent of the government's inducement. [c.o.] In doing so, the government may make an appropriate and searching inquiry into the conduct of the defendant and present evidence of the defendant's prior criminal history so long as that history is relevant to the issue of the defendant's predisposition." [e.s.]
629 So.2d at 95. Later, after discussing the Florida decisions, the court noted that when Herrera was decided "at that time, the United States Supreme Court's decision in Jacobson had not been rendered." 629 So.2d at 97. It was at this point that the court candidly acknowledged the uncertainty of the entrapment law in Florida.
Turning its attention to section 777.201, the court stated:
"The first question to be addressed under the subjective test is whether an agent of the government induced the accused to commit the offense charged. On this issue, the accused has the burden of proof and, pursuant to section 777.201, must establish this factor by a preponderance of the evidence. If the first question is answered affirmatively, the second question arises as to whether the accused was predisposed to commit the offense charged; that is, whether the accused was awaiting any propitious opportunity or was ready and willing, without persuasion, to commit the offense. On this second question, according to our decision in Herrera, the defendant initially has the burden to establish lack of predisposition. However, as soon as the defendant produces evidence of no predisposition, the burden then shifts to the prosecution to rebut this evidence beyond a reasonable doubt. In rebutting the defendant's evidence of lack of predisposition, the prosecution may make `an appropriate and searching inquiry' into the conduct of the accused and present evidence of the accused's prior criminal history, even though such evidence is normally inadmissible. However, admission of evidence of predisposition is limited to the extent it demonstrates predisposition on the part of the accused both prior to and independent of the government acts....
"The third question under the subjective test is whether the entrapment evaluation should be submitted to the jury. Section 777.201 directs that the issue of entrapment be submitted to the trier of fact. Such direction is consistent with the subjective evaluation of entrapment because the two factual issues above ordinarily present questions of disputed facts to be submitted to the jury as the trier of fact. However, if the factual circumstances of a case are not in dispute, if the accused establishes that the government induced the accused to commit the offense charged, and if the State is unable to demonstrate sufficient evidence of predisposition prior to and independent of the government conduct at issue, then the trial judge has the authority to rule on the issue of predisposition as a matter of law." [e.s.]
629 So.2d at 99-100. It is apparent from Munoz that the court has now aligned the law of entrapment in Florida and the shifting burden of proof with that of the United States Supreme Court in Jacobson.
Under this new formulation set forth in Munoz, it seems clear that the following text from the current standard jury instruction is inaccurate or incomplete:
"the defendant must prove to you by a preponderance of the evidence that his criminal conduct occurred as a result of entrapment."
Munoz held that the defendant has the burden of proving inducement. Moreover, once defendant presents any evidence showing a lack of predisposition, the burden of proving predisposition then shifts back to the prosecution to overcome the defendant's showing beyond a reasonable doubt. Thus, we agree that the standard jury instruction does not fairly and correctly present the current state of the law on this issue. The trial judge should therefore have given an instruction that complies with Munoz. State v. Bryan, 287 So.2d 73 (Fla.1973), cert. denied, 417 U.S. 912, 94 S.Ct. 2611, 41 L.Ed.2d 216 (1974) (despite the supreme court's approval of the standard jury instructions, the trial judge is *14 not relieved of his or her responsibility under the law to correctly charge the jury).
It should be noted that the judge is not necessarily required to submit the issue of entrapment to the jury. Munoz held that the judge may decide the issue as a matter of law where the facts are not in dispute. Accordingly, we leave this option open to the trial judge in this case; if she submits the issue to the jury, however, we think the instruction given must adequately reflect the current state of the law.
REVERSED.
GLICKSTEIN and GROSS, JJ., concur.

ON MOTION FOR REHEARING
We deny the motion for rehearing, clarification and rehearing en banc but certify the following question to the supreme court as of great public importance:

Does the inaccuracy or incompleteness of the current standard jury instruction for the defense of entrapment reflect a fundamental change in the law requiring retroactive application to all cases after Munoz, or is it instead an evolutionary change in the law requiring only prospective application?

GLICKSTEIN and GROSS, JJ., concur.
NOTES
[1] See § 16(a), Art. I, Fla. Const. (as amended 1988) (accused shall have right "to confront at trial adverse witnesses").
[2] Ordinarily, because of mootness, we would not now address this jury instruction issue. The parties have fully briefed the issue, and it is material to the issues tried. Moreover, it is very probable that the issue will remain unsettled throughout the retrial, and so we address it now in the interests of justice and to facilitate the ultimate disposition of this case.
[3] This amended instruction, in turn, copied the text of the applicable statute, which reads:

"(1) [An officer] perpetrates an entrapment if, for the purpose of obtaining evidence of the commission of a crime, he induces or encourages and, as a direct result, causes another person to engage in conduct constituting such crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it.
"(2) A person prosecuted for a crime shall be acquitted if he proves by a preponderance of the evidence that his criminal conduct occurred as a result of an entrapment. The issue of entrapment shall be tried by the trier of fact."
§ 777.201, Fla. Stat. (1995).
[4] See Herrera v. State, 580 So.2d 653, 654 (Fla. 4th DCA 1991).