FULMER, Judge.
Mary Schreiber appeals from her conviction for grand theft, $300 or more, fol *1267 lowing a jury trial. Because the trial court erred by receiving testimony that Schreiber was on probation, we reverse and remand for a new trial.
Schreiber worked at the front desk of a retail auto dealership known as TNT Auto Sales. The dealership was owned by Ann Hamilton. Shortly before the trial, Hamilton had married Mike Floridino, part owner of an entity known as TNT Wholesale Liquidation. It was Floridino who had originally hired Schreiber and later sent her to work at the dealership when business at the wholesale company became slow. The dealership engaged in its own financing, using a procedure in which the buyer would make periodic payments directly to the dealership. One of Schreiber’s tasks was to collect and process payments from customers.
One customer testified that he arrived at the dealership late in the afternoon of Friday, June 10, 2005, to make a payment, just as Schreiber was closing up. Schreiber was the only person there. She reopened the dealership for the customer, collected his $300 cash payment, signed a receipt, and gave him a copy. Schreiber’s story to the detective who interviewed her was that she stapled together the cash and the dealership’s copy of the receipt and placed the bundle in the dealership’s safe. Hamilton testified that the usual procedure, when Hamilton was absent, was for Schreiber to bring collected payments to Hamilton or Floridino at the wholesale company or at their home. Hamilton said that the safe was used only to hold the keys of the cars for sale on the lot, not payments from customers. Hamilton acknowledged that she, Floridino, at least one of Floridino’s sons, Schreiber, and a former employee no longer at the dealership at the time of the incident knew the combination to the safe.
A month or so later, Hamilton realized— or so she thought — 'that the customer had not made his June payment. When she phoned him, he insisted that he had paid and faxed over his copy of the receipt. Hamilton confronted Schreiber about the missing cash. Hamilton testified that Schreiber responded that no one bearing the customer’s name had come to the dealership and made a payment and that she never took money from such a person. Hamilton later contacted the police. Mike Floridino testified that when he learned of the missing $300, he, too, asked Schreiber on two or three occasions if she had taken the money and offered to “work through it” with her if she had. Floridino said that Schreiber denied knowing anything about the transaction with the customer. Schreiber was eventually arrested. A jury found her guilty of grand theft.
Schreiber raises three issues on appeal. We conclude that one of the issues requires that we remand for a new trial because the underlying error was not harmless.
Prior to trial, the court granted Schreiber’s motion in limine requesting that no mention be made of the fact that Schreiber was on probation at the time of the incident at issue here. At trial, during Schreiber’s cross-examination of the detective who had interviewed her, the following question, answer, and objection took place:
Q. [Defense counsel]: Did [Schreiber], in fact, tell you about the fact that— or make some statement to the effect of — that Ms. Hamilton had really poor money management skills?
A. Yes, ma’am, she did.
[Prosecutor]: Objection. Hearsay.
The Court: Overruled. Doctrine of completeness.
After two more questions and answers in the same vein, the prosecutor objected again:
*1268 Objection, Your Honor. This is all self-serving hearsay.
The Court: Overruled. It’s allowed as a complete statement.
The detective went on to testify that Schreiber had told him that Hamilton caused $22,000 worth of checks to bounce in her checking account; in short, it was Schreiber’s theory that the $300 went missing because Hamilton was a poor money manager.
Before he began his redirect examination, the prosecutor requested a bench conference and stated to the court:
Judge, I believe [defense counsel’s] questioning of [the detective] as far as other statements the defendant made has opened the door to some statements she made that you’ve already ruled to be inadmissible. Specifically, she told the detective that she was on probation, she informed [Hamilton] that she was, and that she was up front with them from the beginning, and that she was always honest with them and would never steal from them.
Defense counsel replied that the fact that Schreiber was on probation “has nothing to do with anything” and was more prejudicial than probative. The court responded that testimony about Schreiber’s probation would not be irrelevant because it would “complete [Schreiber’s] explanation of why she would not do it”; after all, the court had applied the “doctrine of completeness” to let Schreiber, via the detective’s testimony, give an exculpatory explanation of how the money went missing. After some additional argument, the court concluded that the information to be elicited by the prosecutor “now completes the exculpatory explanation” that defense counsel had elicited.
On redirect, the prosecutor began, “Detective [ ], during the taped statement that the defendant gave, she gave other — other reasons for why she wouldn’t have taken the money, isn’t that true?” The detective responded in the affirmative, and the prosecutor ascertained that Schreiber had informed the detective that she had disclosed to both Hamilton and Floridino that she was on probation. Defense counsel objected when the prosecutor attempted to elicit whether Schreiber had mentioned what she was on probation for. The judge overruled the objection, stating, “Doctrine of completeness. I’m going to allow it.” As it turned out, there was nothing in Schreiber’s statement to the detective that identified the underlying offense for which she was on probation.
The “doctrine of completeness,” or “rule of completeness,” to which the trial court was referring is apparently that of section 90.108(1), Florida Statutes (2005), which reads, in pertinent part, as follows:
When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him or her at that time to introduce any other part or any other writing or recorded statement that in fairness ought to be considered contemporaneously.
See also Larzelere v. State, 676 So.2d 394, 401 (Fla.1996) (noting that section 90.108 is known as the “rule of completeness”). The purpose of the rule is “to avoid the potential for creating misleading impressions by taking statements out of context.” Id. (citing Charles W. Ehrhardt, Florida Evidence § 108.1 (1995 ed.)). Although the plain language of the statute requires the adverse party to introduce the other part of the statement at the time that the first party introduces the statement, Florida courts have generally allowed the adverse party to delay introducing the other part of the statement until cross-examination. See, e.g., Vazquez v. State, 700 So.2d 5, 8-9 (Fla. 4th DCA 1997); cf. Ehrhardt, Florida Evidence at § 108.1 nn. 4-5 (2007 *1269 ed.). Likewise, although the language of the statute does not refer to oral statements, the courts have applied the rule of completeness to such statements. See Eh-rhardt, Florida Evidence at § 108.1 n. 7 (2007 ed.). The fairness determination noted in the rule “falls within the discretion of the trial judge.” Larzelere, 676 So.2d at 402.
Although not dispositive of our determination that a new trial is required, we examine first the trial court’s invocation of the rule of completeness to allow Schreiber to cross-examine the detective as to the exculpatory statements made to him by Schreiber concerning Hamilton’s alleged money mismanagement. We note first that Schreiber’s statements were not admissible as an admission under section 90.803(18)[1] because she was not offering the statement against a party. See Lott v. State, 695 So.2d 1239, 1243 (Fla.1997) (“Self-serving statements are not admissible under section 90.803(18).”); Cotton v. State, 763 So.2d 437, 439 (Fla. 4th DCA 2000). However, even if we assume that the rule of completeness can be used to introduce otherwise inadmissible hearsay in appropriate circumstances,[2] here the scope of the rule does not allow for the introduction of Schreiber’s exculpatory statements. Rather, “[t]he opposing party is entitled to have a portion of the [statement] introduced only insofar as it tends to explain or shed light upon the part already admitted.” Ehrhardt, Florida Evidence at § 108.1 (2007 ed.) (emphasis added); see also Evans v. State, 808 So.2d 92, 104 (Fla.2001) (concluding that the rule of completeness did not entitle the defendant to elicit a detective’s hearsay testimony on cross-examination when the jury was not misled or confused by the detective’s direct examination testimony and the detective did not testify about a specific witness’s partial statement that required further clarification); United States v. Pendas-Martinez, 845 F.2d 938, 944 (11th Cir.1988) (“While there are conflicting Circuit Court decisions on whether the rule makes admissible parts of a document that otherwise would be inadmissible under the [federal] Rules of Evidence, it is consistently held that the rule permits introduction only of additional material that is relevant and is necessary to qualify, explain, or place into context the portion already introduced.” (footnote and citations omitted)); United States v. Marin, 669 F.2d 73, 84 (2d Cir.1982) (“The completeness doctrine does not, however, require introduction of portions of a statement that are neither explanatory of nor relevant to the admitted passages.”).
Here, the entirety of the substantive examination of the detective by the prosecutor on direct examination was as follows:
Q. What did the defendant say when you asked her about [the customer]?
A. I’d asked her about if she’d taken a payment from [the customer], and she told me that she took the payment and gave him a receipt.
Q. Did she tell you what she did with that payment?
A. She told me that she took the cash and I guess a copy of the receipt and stapled it together and placed it in the safe in the business.
Q. Did she tell you where she went after she left the business that day?
*1270 A. Says she' went to TNT Auto Sale [sic] to see Mike.
The statements just quoted describe a simple sequence of events: how Schreiber handled the transaction and where she put the money. The prosecutor apparently limited his direct examination to these statements to bring to the jury’s attention the significant discrepancy between Schreiber’s denials to Hamilton and Flori-dino and her statement to the detective. In contrast, the exculpatory statements brought out by Schreiber on cross-examination concerning Hamilton’s alleged money mismanagement did nothing to explain, shed light on, qualify, or place into context the statements brought out on direct examination. Furthermore, we do not believe that the jury would have been confused or misled by the statements elicited on direct examination standing alone. See Evans, 808 So.2d at 104. As such, and notwithstanding the relatively permissive abuse-of-discretion standard of review, we conclude that the trial court improperly relied on the rule of completeness to allow Schreiber’s exculpatory statements to be introduced during cross-examination.
The issue on appeal concerns the trial court’s second invocation of the rule of completeness, that is, whether the trial court abused its discretion in allowing Schreiber’s statements concerning her probation status to be introduced during the State’s redirect examination of the detective. As noted above, the State sought and the court permitted the introduction of the statements to “complete! ] the exculpatory explanation” elicited by defense counsel during cross-examination. We conclude that the rule of completeness was improperly invoked to introduce the statements on redirect. To the extent that Schreiber’s statements concerning probation were exculpatory, they represented an exculpatory theory independent of her other theory that Hamilton’s money mismanagement caused the $300 to go astray. Indeed, the prosecutor’s question to the detective on redirect characterized the statements he was eliciting as “other reasons.” They were therefore neither explanatory of nor relevant to the money mismanagement theory. See Marin, 669 F.2d at 84. Furthermore, there was nothing misleading or confusing about the testimony concerning the money mismanagement theory that testimony concerning probation could have clarified. See Evans, 808 So.2d at 104. Finally, the introduction of the probation testimony did nothing to enhance fairness, as contemplated by section 90.108(1). As such, there was no justification for the admission of the testimony concerning Schreiber’s probation status. We are therefore compelled to conclude that the trial court abused its discretion in allowing the testimony to be introduced.
The only matter remaining for us to determine is whether the error was harmless. After a thorough review of the record, we “cannot say beyond a reasonable doubt that the error did not affect the verdict.” See State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986). We reach this conclusion because, given the minimal substantive evidence pointing directly to Schreiber and ruling out others as the thief, the jury was being asked to decide a credibility contest between Schreiber and Hamilton.
Schreiber’s credibility suffered from the contrast between her denials to Hamilton and Floridino of any knowledge of the transaction with the customer and her ready admission to handling the transaction when she spoke with the detective. Two aspects of Hamilton’s testimony could have reflected adversely on her credibility. First, on cross-examination Hamilton stated that she had never seen the $300 in question. Defense counsel then brought to *1271 Hamilton’s attention an affidavit prepared by a police officer and sworn to by Hamilton stating that she saw the money on June 10, 2005, the date of the transaction. Hamilton acknowledged that “[tjhat’s what it says,” but insisted that she never saw the money and that the affidavit was “mi-sinformative.” Second, on direct examination, Hamilton denied having seen the dealership’s copy of the receipt and stated that when the customer faxed her his copy, which bore a serial number, she noticed that the dealership’s copy was missing from the receipt book. However, Floridi-no on cross-examination acknowledged, with reference to an earlier deposition, “I don’t remember how [Hamilton] really found it, but I knew she came across a receipt that contradicted [Schreiber’s] story about not being paid.”
With the credibility of both Schreiber and a key State witness at issue, we cannot say beyond a reasonable doubt that disclosure of a matter as potentially damaging as Schreiber’s probation did not affect the jury as it reached a verdict. Because the error in allowing Schreiber’s probation status to be disclosed was harmful, we reverse and remand for a new trial.
Reversed and remanded for a new trial.
DAVIS and WALLACE, JJ., Concur.

. Section 90.803, Florida Statutes (2005), reads, in pertinent part:
The provision of s. 90.802 to the contrary notwithstanding, the following [is] not inadmissible as evidence, even though the de-clarant is available as a witness: ... (18) ... A statement that is offered against a party and is: (a) The party’s own statement in either an individual or a representative capacity....

. The authorities and Florida case law are not unanimous on this issue. See Ehrhardt, Florida Evidence at § 108.1 nn. 11-15 (2007 ed.).