924 So.2d 975 (2006)
Keyuhn CHAMBERS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D04-2671.
District Court of Appeal of Florida, Second District.
April 7, 2006.
*976 James Marion Moorman, Public Defender, and Douglas S. Connor, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Susan M. Shanahan, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
Keyuhn Chambers appeals a judgment for armed burglary of a dwelling, aggravated assault, burglary of a dwelling with an assault or battery, and robbery with a firearm. All of the charges arose when Mr. Chambers forcibly entered the home of his girlfriend in an imprudent and failed attempt to preserve their relationship. The State properly concedes that Mr. Chambers' convictions for both armed burglary of a dwelling and burglary of a dwelling with an assault or battery violate principles of double jeopardy because they were based upon a single forced entry and involved a single victim. See Valdez v. State, 915 So.2d 636 (Fla. 2d DCA 2005). We also conclude that Mr. Chambers is entitled to a new trial due to prosecutorial misconduct in closing argument.[1]
In 2002, when Mr. Chambers was twenty years old, he met the sixteen-year-old victim while she was working at a fast-food restaurant and began to date her. The victim's parents did not approve of Mr. Chambers' dating their daughter and repeatedly instructed their daughter to end the relationship. Despite this, the victim continued to see Mr. Chambers. When she was seventeen, she terminated a pregnancy that resulted from the relationship and was again warned to stay away from Mr. Chambers. Nevertheless, Mr. Chambers would often pick up the victim around the corner from her school bus stop and take her to school, and then give her a ride home from school or work. The school bus driver apparently notified the victim's parents of this shortly before Memorial Day weekend 2003.
The parents responded by placing the victim on restriction and again forbidding her from having contact with Mr. Chambers. The victim telephoned Mr. Chambers on the Friday of Memorial Day weekend and told him that they could not continue to see each other. Mr. Chambers called the victim on Saturday and Sunday until the victim turned off the *977 telephone's ringer on her mother's instructions. The telephone remained off on Monday and on Tuesday morning.
The victim arrived home on Tuesday after a half day of school and turned the ringer back on. At one point, she answered the ringing telephone but received no response. Shortly thereafter, she went outside to check the mail and saw a disposable camera on her porch. As she attempted to go back into the house, Mr. Chambers rushed up, pushed his way into the home, and knocked the victim to the floor. Although Mr. Chambers began to confess his love for the victim and to plead with her to resist her parents' efforts to break up their relationship, he did so while threatening her with a BB gun he had just purchased. When the victim screamed, he tried to put socks in her mouth and showed her some duct tape.
The victim attempted to remain calm and finally convinced Mr. Chambers to put the gun down and to allow her to stand up. The two began to talk, and Mr. Chambers asked the victim to run away with him. In an attempt to get Mr. Chambers to leave, the victim agreed to pack a bag for this purpose and to let Mr. Chambers take it with him as security that she would later join him. Mr. Chambers helped pack the bag and then left with it. With Mr. Chambers safely out of the home, the victim called the police.
Based upon this incident, Mr. Chambers was charged with armed burglary of a dwelling with a firearm, aggravated assault with a firearm, burglary of a dwelling with assault or battery, and robbery with a firearm. The robbery charge was based upon Mr. Chambers' taking the victim's packed bag with him when he left the residence. During the trial, the prosecutor was quite zealous. Despite numerous objections, he consistently conducted direct examination through leading questions that often paraphrased and repeated the testimony presented as he interpreted it. During the questioning of the victim, he elicited not only the details of her relationship with Mr. Chambers but also the fact that she had graduated the night before trial, that she had always been a good student, and that her parents were very concerned and involved with her academic and social life. Mr. Chambers testified in his own defense at trial and therefore was questioned about his three prior felony convictions.
We note initially that there was no evidence that the relationship between Mr. Chambers and the victim was illegal. While people may question the ethics or propriety of such a relationship, Mr. Chambers committed no crime in this respect. At trial, some explanation of the relationship between Mr. Chambers and the victim was certainly necessary to explain the circumstances related to the charged offenses. Although some evidence of the nature of this relationship was admissible, the trial court and counsel had to ensure it did not become the focus of the jury's attention.
In closing argument, however, the prosecutor, in addition to reviewing the evidence regarding Mr. Chambers' entry into the house, proceeded to argue:
[H]e told you in his own testimony he did two years in Georgia, he gets out on felony charges and comes to Florida and picks up this lady's 16-year old high school daughter at her bus stop. They're trying to raise their daughter the best they can, send her to school and make sure she does the right thing and this man is picking up high school kids and having sex with them.
. . . .
It's pretty clear she's in high school and in fact she's in high school until last *978 night a year later. By both of them they had sex. What is this man doing with this kid? She is a child. She is a child. She has no business being in this courtroom coming down here and last night she celebrated one that should have been one of the most joyous occasions of her life. She celebrated high school. She graduated. She made it.
What does she have to do the very next day? She's got to come here in this courtroom with people she doesn't even know. She doesn't know you. She has to get on that witness stand in front of her mom, in front of people she doesn't know and talk about how this 22-year-old man picked her up.
. . . .
This kid has no business being in here testifying about this. And this defense attorney stands before you and questions her integrity and candor. Having to come in here and talk about the pregnancy. Having to talk about her abortion and she is not credible.
Defense counsel objected to the prosecutor's argument, but the objections were overruled.
In deliberations, the jury questioned whether a BB gun could be considered a "firearm" or "deadly weapon" and ultimately rendered a verdict of guilt to the lesser offense of armed burglary of a dwelling (not with a firearm), the lesser offense of aggravated assault (not with a firearm), burglary with an assault or battery as charged, and armed robbery with a firearm as charged. Mr. Chambers received a life sentence as a prison releasee reoffender for the most serious of these charges.
This trial was not about the ethics of Mr. Chambers' relationship with a girl who was initially sixteen years of age. There was no evidence, nor would any such evidence have been relevant, that Mr. Chambers had any other similar relationships with other high school girls. These arguments had no purpose but to inflame the minds of the jurors against Mr. Chambers. Such arguments are clearly prohibited. See Garron v. State, 528 So.2d 353, 359 (Fla.1988); Bertolotti v. State, 476 So.2d 130, 134 (Fla.1985). Permitting this general attack on the defendant's character was error. See Gonzalez v. State, 588 So.2d 314 (Fla. 3d DCA 1991).
Further, the prosecutor's expressed indignation at the need for the victim to testify the morning after her graduation and the need for her to face questioning by defense counsel as to her credibility was improper. See Peterson v. State, 376 So.2d 1230, 1233 (Fla. 4th DCA 1979); Jenkins v. State, 563 So.2d 791 (Fla. 1st DCA 1990).
We note that the prosecutor was permitted to question the credibility of Mr. Chambers' testimony given his prior felony convictions. The prosecutor was also permitted to respond to Mr. Chambers' argument that the victim might have falsely accused Mr. Chambers by arguing that it was unlikely the victim would want to fabricate such a story and face the exposure of her personal life at trial. However, the prosecutor did not simply make these arguments, he extended them inappropriately to invoke the sympathy or anger of the jury by focusing on the immorality of the relationship and the indignities associated with trial, without connecting it to the relevant issues presented to the jury.
In order to require a new trial based on improper prosecutorial comments, the prosecutor's comments must either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced *979 the jury to reach a more severe verdict than that it would have otherwise reached. Spencer v. State, 645 So.2d 377, 383 (Fla.1994). Here, we conclude the argument deprived Mr. Chambers of a fair and impartial trial and was so inflammatory it may have influenced the jury to reach a more severe verdict than it would have otherwise rendered. Thus a new trial is warranted. See Johns v. State, 832 So.2d 959 (Fla. 2d DCA 2002). Although there was evidence to support the convictions, that evidence was disputed, particularly as it related to whether the packing of the victim's bag to purportedly run away with Mr. Chambers constituted a "robbery" and whether each crime involved the use of a "firearm" or a "deadly weapon."[2] As such, we cannot conclude the error was harmless.
We reverse and remand for a new trial. On remand, we note that only one conviction for burglary may stand.
CASANUEVA and SALCINES, JJ., Concur.
NOTES
[1] The prosecutor who tried this case is no longer an assistant state attorney.
[2] We note that although the jury found no firearm was used in the commission of the armed burglary or aggravated assault, it found a firearm was used in the robbery. Although this may not constitute a legally inconsistent verdict that would require reversal, the verdict does appear to be factually inconsistent and suggests the jury was improperly influenced by the prosecutor's closing argument.