TAYLOR, J.
Appellant, Luke Petruschke, appeals his convictions for two counts of lewd and lascivious molestation committed upon C.V., a three-year-old boy. We reverse for a new trial because the prosecutor made improper remarks that deprived appellant of a fair trial. We also write to address evidentiary issues that are likely to arise on retrial.
By way of background, appellant was a good friend of C.V.’s father and frequently came over to C.V.’s family’s house. According to C.V.’s mother, appellant was always “very, very nice” to C.V. and seemed concerned about him. When C.V. was alone in his room watching movies, sometimes appellant would go in and sit with him with the door open.
On the evening of the alleged incident, appellant was at C.V.’s family’s home, drinking and partying with C.V.’s father and another adult relative of C.V. Between 9 and 11 p.m., C.V.’s mother put C.V. to bed in his grandmother’s room, which was the room closest to the living room. Appellant stayed over at C.V.’s house and eventually went to sleep on the couch in the living room. At some point in the night, C.V.’s father went to check on C.V. and saw appellant lying down next to C.V. near the foot of the bed. The father told appellant to come back to the living room. The father thought “nothing of it” and did not have any suspicions that appellant had done anything.
The next morning, C.V.’s mother developed a gut feeling that something might have happened to C.V. She testified that she felt this way because when her adult male neighbor came over that morning, C.V. jumped in his lap and hugged him, which the mother believed was unusual.
When appellant was gone, the mother asked C.V. if anyone had ever touched him in his private areas. C.V. answered: ‘Wes. Luke did last night.” When the mother asked C.V. to show her how appellant touched him, C.V. put his hands in the front of his pants and again in the back. The mother told C.V. that this was serious and he could not lie about it. C.V. said, “Mommy, I wouldn’t lie to you about that.” *278 The mother then had C.V. repeat the allegations to his father. C.V. again said that appellant touched “his butt and his PP” and then demonstrated to his father how appellant touched him.
When appellant returned, C.V.’s father confronted him, asking him why he would touch a boy. Appellant’s reaction was “like a deer in the headlights” and appellant left without saying anything. Shortly thereafter, C.V.’s father again confronted appellant and screamed, “You like to touch boys?” C.V.’s father started coming toward appellant, and appellant said, “I’m sorry.” Appellant ran into his car and locked the door, but C.V.’s father broke the car window with a rock and started beating him. C.V.’s father was arrested and charged with aggravated battery; he spent about thirty days in jail and was ultimately placed on probation for the offense.
A detective spoke to C.V.’s mother and then conducted a taped interview of C.V. In the interview, C.V. told the detective that appellant touched his PP and his butt underneath his clothing for a “little bit” of time “yesterday ... [i]n my room.”
Following these allegations, appellant was charged by information with two counts of lewd or lascivious molestation committed upon a child under twelve-years of age.
The case proceeded to trial. The jury heard evidence of the facts set forth above, including testimony from C.V. about the incident. Additionally, the state elicited testimony from both parents — over appellant’s objections that the evidence was irrelevant, prejudicial, and unsupported by expert testimony — that, after the incident, C.V. wet his bed almost every night, woke up crying in terror, and went to counseling. Although the father was in jail for about a month following his arrest for attacking appellant, both parents denied that this could have caused C.V.’s behavior. The father talked to C.V. every day on the phone, saw him once a week at the jail, and told him he would be coming home soon. The mother stated that C.V.’s bed wetting continued after the father got out of jail.
After the parties gave their closing arguments, which will be discussed in greater detail below, the jury found appellant guilty as charged on both counts. This appeal ensued.

Improper Prosecutorial Comments

We first address appellant’s argument that the state’s improper comments deprived him of a fair trial.
A trial court’s rulings on objections to improper argument are reviewed under the abuse of discretion standard. Paul v. State, 958 So.2d 1135, 1136 (Fla. 4th DCA 2007). In order to require a new trial based on improper prosecutorial comments, the prosecutor’s comments must either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise. Anderson v. State, 863 So.2d 169, 187 (Fla.2003).
Here, we agree with appellant that the prosecutor made numerous improper comments. Specifically, we find that the following comments the prosecutor made, over objection, were improper: 1) claiming that C.V. lacked the mental ability to fabricate the allegations; and 2) repeatedly referring to appellant as a “pedophile” and suggesting that a pedophile would “touch a *279 kid whenever he feels like it.”[1]

1) Remark that C.V. Lacked the Mental Ability to Fabricate the Allegations

A prosecutor “is prohibited from commenting on matters unsupported by the evidence produced at trial.” Fenster v. State, 944 So.2d 477, 479 (Fla. 4th DCA 2006). Closing argument must be confined to record evidence and reasonable inferences from that evidence. Spoor v. State, 975 So.2d 1233, 1235 (Fla. 4th DCA 2008).
Here, although the trial court initially sustained defense counsel’s objection to the prosecutor’s argument that a three-year-old does not have the capacity to fabricate allegations of sexual abuse, the court ultimately denied appellant’s motion for mistrial and then ruled that the prosecutor could argue that a three-year-old does not have the mental ability to fabricate allegations of sexual abuse. Allowing this type of argument was an abuse of discretion.
Contrary to the state’s argument in this appeal, the prosecutor’s remark was not a “fair inference” from the evidence. There was absolutely no evidence presented at trial that a three-year-old child lacks the mental ability to fabricate allegations of sexual abuse. The prosecutor simply invented this claim in closing argument.
While it might be permissible for a prosecutor to argue that a child of three would be unlikely to fabricate allegations of sexual abuse out of self-interest, there was no evidence to support a blanket assertion that a three-year old lacks the ability to fabricate allegations of sexual abuse. Here, the allegations of sexual abuse were not spontaneous, but rather were in response to questioning by an adult, and there was no evidence presented at trial that a three-year-old child lacks the mental ability to fabricate allegations of sexual abuse in such circumstances. In short, the prosecutor’s argument that C.V. lacked the mental ability to fabricate the allegations was unsupported by the evidence and was not a reasonable inference from the evidence. It was therefore improper.

2) Repeatedly Calling Appellant a “Pedophile”

Arguments that have no purpose but to inflame the minds of jurors are prohibited, as are general attacks on the defendant’s character. Chambers v. State, 924 So.2d 975, 978 (Fla. 2d DCA 2006). For example, a prosecutor’s references to a defendant as a “sadistic, selfish bully,” a “criminal,” a “convicted felon,” a “rapist,” and a “chronic liar” were held to fall into the realm of improper character attacks. See Pacifico v. State, 642 So.2d 1178, 1183 (Fla. 1st DCA 1994). Similarly, our court has found that a prosecutor’s thirty references to the defendant as a “condom-carrying masturbator” or a “masturbator” were designed to inflame the prejudices of the jury and constituted an impermissible general attack on the defendant’s character, even though some evidence supported the comments in that the defendant admitted to masturbating in a bathroom stall. See Elisha v. State, 949 So.2d 271, 273 (Fla. 4th DCA 2007).
In a case where the facts were similar to those in this case, the Fifth District held that a prosecutor’s reference to the defen *280 dant as a pedophile in the closing argument of the defendant’s trial for sexual battery upon a child was improper because, in addition to suggesting that the defendant had committed prior illegal sexual acts involving children, it also improperly suggested a profile-type argument that, if the defendant had certain traits which fit the offender profile, he must have abused the victim. See Hudson v. State, 820 So.2d 1070, 1071-72 (Fla. 5th DCA 2002).[2]
Here, the prosecutor’s repeated references to appellant as a pedophile were clearly designed to inflame the prejudices of the jury and constituted an impermissible general attack on appellant’s character. Referring to appellant as a pedophile improperly suggested that he may have committed prior illegal sexual acts involving children and further suggested an improper “pedophile profile” argument. Although defense counsel objected only to the first reference to appellant as a pedophile, the court immediately overruled that objection, making it clear that the prosecutor would be permitted to pursue that line of argument. Cf. Edwards v. State, 428 So.2d 357, 359 (Fla. 3d DCA 1983) (“Here a timely objection to the argument was immediately overruled by the court without comment, which ruling stamped approval on the argument, thereby aggravating the prejudicial effect.”).
To be sure, defense counsel himself used the term “pedophile” in his closing argument and tried to suggest that appellant’s conduct was inconsistent with what a pedophile would do, but it is important to note that defense counsel made this argument only after the prosecutor, over defense objection, was permitted to characterize appellant as a pedophile. Furthermore, the prosecutor’s remarks during rebuttal closing argument, although somewhat responsive to defense counsel’s remarks, were simply too inflammatory to constitute a fair reply to defense counsel’s argument. We conclude that the prosecutor’s remarks were an impermissible attack on appellant’s character.

Harmless Error Analysis

The improper comments cannot be considered harmless. “The harmless error test ... places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.” Metayer v. State, 89 So.3d 1003, 1008 (Fla. 4th DCA 2012) (quoting State v. DiGuilio, 491 So.2d 1129, 1138 (Fla.1986)).
The accusations against appellant came from a three-year-old, there were no other witnesses to the alleged touching, and there was no physical evidence against appellant. Further, although appellant made the incriminating statement that he was “sorry,” this statement does not necessarily constitute a “confession.” Appellant made this statement as C.V.’s father was about to assault him. On this record, the prosecutor’s numerous improper remarks were collectively so egregious that appellant was deprived of a fair trial. We caution the state to avoid these types of improper arguments on retrial.

Double Jeopardy

Because we are reversing appellant’s convictions and remanding for a new trial, *281 we need not address appellant’s double jeopardy argument. See, e.g., Thomas v. State, 547 So.2d 989, 990 (Fla. 1st DCA 1989) (finding it unnecessary to address double jeopardy claim where defendant’s convictions were reversed on another ground and case was remanded for a new trial). We find it appropriate, however, to address the evidentiary issues on appeal that are likely to arise again on retrial.

Evidence of C.V.’s Behavior After the Alleged Abuse

Appellant argues that the trial court erred in admitting testimony from C.V.’s parents that, after the alleged offense, he wet his bed more often, woke up crying with terror, and began counseling. He asserts that the evidence was irrelevant and unduly prejudicial and that the evidence was speculative because no expert testified that sexual abuse could have been the cause of C.V.’s distress. We disagree. The trial court did not abuse its discretion in admitting this evidence.
Relevant evidence is evidence tending to prove or disprove a material fact. § 90.401, Fla. Stat. (2010). Generally, any evidence relevant to prove a fact at issue is admissible unless precluded by a specific rule of exclusion. See State v. Williams, 992 So.2d 380, 333 (Fla. 3d DCA 2008); see also § 90.402, Fla. Stat. (2010). However, even if evidence is relevant, it is inadmissible “if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.” § 90.403, Fla. Stat. (2010). “In weighing the probative value against the unfair prejudice, it is proper for the court to consider the need for the evidence; the tendency of the evidence to suggest an improper basis to the jury for resolving the matter, e.g., an emotional basis; the chain of inference necessary to establish the material fact; and the effectiveness of a limiting instruction.” State v. McClain, 525 So.2d 420, 422 (Fla.1988) (quoting 1 C. Ehrhardt, Florida Evidence § 403.1 at 100-03 (2d ed. 1984)).
Here, contrary to appellant’s argument, evidence of C.V.’s behavioral changes following the alleged sexual abuse was probative of a material fact in the case — namely, the issue of whether C.V. was, in fact, sexually abused. In Elysee v. State, 920 So.2d 1205 (Fla. 4th DCA 2006), which involved a prosecution for attempted sexual battery of a teenage victim, we held that the trial court did not abuse its discretion in admitting testimony by the victim’s mother as to the victim’s morose behavior in the days following the incident with the defendant. We did caution, however, that the prejudicial impact of this type of evidence could, under different circumstances, outweigh its probative value. Id. at 1208.
In this case, similar to Elysee, the evidence of C.V.’s behavioral changes was relevant to corroborate C.V.’s allegations, where appellant’s theory of defense — at least implicitly — was that the alleged abuse may have been planted in C.V.’s mind by his concerned mother. Hypothetically, if C.V. had acted completely normally after the incident, such evidence undoubtedly would have been relevant to the defense. It follows that the opposite is also true. Where an alleged victim of sexual abuse behaves in a manner that is out of the ordinary, such evidence is probative of the veracity of the victim’s allegations. While there is a risk of unfair prejudice in that the evidence could elicit sympathy for the victim, the probative value of such evidence here was not substantially outweighed by the risk of unfair prejudice. The state’s need for the evidence was strong given that the alleged victim was only three years old and there *282 were no other witnesses to the alleged touching.
Appellant’s reliance upon cases such as Johnson v. State, 40 So.3d 883 (Fla. 4th DCA 2010), and Aho v. State, 393 So.2d 30 (Fla. 2d DCA 1981), is misplaced. In those cases, the appellate courts reversed convictions for sexual crimes where the state elicited evidence that the complainants were suicidal after the alleged abuse.
For example, in Johnson, a prosecution for lewd and lascivious battery, we held that it was error to admit evidence of the alleged victim’s suicide attempts, because the minimal probative value of the evidence was substantially outweighed by the danger of unfair prejudice. 40 So.3d at 887. There, the trial court determined that the evidence of the suicide attempts tended to both prove and disprove the alleged sexual conduct; the alleged victim may have been suicidal because the allegations of sexual abuse were true, but she also could have been suicidal because she was in turmoil after making false allegations. Id. at 886. On appeal, we concluded “if the evidence ‘cuts both ways,’ its probative value is minimal at best.” Id. We further found that the testimony had a substantial likelihood of inflaming the jurors and appealing to their emotions. Id. at 887. We reversed the defendant’s convictions, concluding that the error in admitting the testimony about the suicide attempts was not harmless. Id. at 887-88.
Here, evidence that the victim often wet the bed and woke up crying in the days and weeks after the alleged abuse is far less prejudicial than the evidence in Johnson and Aho that the alleged victims were suicidal. Moreover, Johnson involved a situation where there were two equally plausible reasons for the alleged victim’s suicide attempts. By contrast, it cannot be said that the evidence “cut both ways” in this case.
Evidence is not inadmissible merely because there is more than one possible inference to be made from that evidence. Although the defense argued that C.V.’s behavior could have been caused by his father’s incarceration, the state presented evidence that C.V.’s behavioral issues continued even after the father returned home. This makes the defense explanation for C.V.’s behavior less plausible than the state’s theory. Because the evidence supported the state’s theory more strongly than the defense theory, the evidence had significant probative value regarding the issue of whether the alleged sexual abuse occurred.
Moreover, contrary to appellant’s argument, the state was not required to offer “pure opinion” expert testimony[3] *283 to establish a foundation for the relevance of evidence of C.V.’s behavioral changes or for the prosecutor to suggest in closing argument that C.V.’s behavior was caused by something “traumatic.” Expert testimony is unnecessary “when the facts testified to are of such nature as not to require any special knowledge or experience in order for the jury to form its conclusions.” Frances v. State, 970 So.2d 806, 814 (Fla.2007).
We recognize that “pure opinion” expert testimony may be required when the state seeks to show that behavior which seems, in common experience, to be inconsistent with sexual abuse is, in fact, indicative of abuse. But the opposite is not true. Common sense dictates that sexual abuse can cause emotional distress in children. Therefore, the state is free to present evidence of a child’s behavior after an alleged incident of sexual abuse if a reasonable inference can be made, within the common knowledge of jurors, that the alleged victim’s behavior could have been caused by sexual abuse. For example, in Elysee, this court found that evidence of the teenage complainant’s “morose” behavior following an attempted sexual battery was relevant. Notably, the Elysee court never suggested that expert testimony was necessary to establish that the alleged victim’s “morose” behavior was consistent with someone who was the victim of sexual abuse.
In sum, the evidence of C.V.’s behavioral changes was relevant, the relevancy of the evidence was not substantially outweighed by unfair prejudice, expert testimony was unnecessary to lay a foundation for the admission of the evidence, and the state’s argument in closing that the evidence established that something “traumatic” happened to C.V. was a permissible inference to argue to the jury. The trial court did not abuse its discretion in admitting this evidence.

Exclusion of Evidence of C.V.’s Father’s Cocaine Use

Appellant also challenges the trial court’s ruling granting the state’s motion in limine to exclude evidence that C.V.’s father ingested a large quantity of cocaine on the night appellant allegedly molested C.V.
The right of full cross-examination is absolute and the denial of that right may easily constitute reversible error. See Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); Coxwell v. State, 361 So.2d 148, 152 (Fla.1978); Coco v. State, 62 So.2d 892, 894-95 (Fla.1953). As our supreme court explained in Coco:
[A] fair and full cross-examination of a witness upon the subjects opened by the direct examination is an absolute right, as distinguished from a privilege, which must always be accorded to the person against whom the witness is called and this is particularly true in a criminal case....
62 So.2d at 894-95.
Evidence of a witness’s drug use for the purpose of impeachment is admissible to impeach the witness if “(a) it can be shown that the witness had been using drugs at or about the time of the incident which is the subject of the witness’s testimony; (b) it can be shown that the witness is using drugs at or about the time of the testimony itself; or (e) it is expressly shown by other relevant evidence that the prior drug use affects the witness’s ability to observe, remember, and recount.” Ed *284 wards v. State, 548 So.2d 656, 658 (Fla.1989).
This case falls under rule (a) in Edwards, because the father admitted during his deposition to using cocaine throughout the night C.V. was allegedly molested. This evidence was admissible because the father’s cocaine use occurred “at or about the time of the incident which is the subject of the witness’s testimony.” Id. The father testified that he saw appellant lying down next to C.V. at the foot of the bed in C.V.’s grandmother’s room and he told appellant to return to the living room. Evidence of the father’s heavy cocaine use at that time was relevant to his ability to observe and perceive matters that occurred on the night of the incident. Although defense counsel failed to make a proffer and could have made a more cogent argument to the trial court regarding the relevance of this evidence, we find the issue was adequately preserved because the substance of the evidence was made known. See Hammett v. State, 908 So.2d 595, 597 (Fla. 2d DCA 2005). Further, it was unnecessary for the defense to offer expert evidence regarding the effect of cocaine on the father’s ability to perceive. See Felton v. State, 949 So.2d 342, 344 (Fla. 4th DCA 2007) (“In precluding the evidence [of the witness’s drug use], the trial court focused on the lack of expert testimony showing the effects of methadone on a person’s ability to perceive; however, expert testimony is not necessary when the witness used drugs ‘at or about the time of the incident which was the subject of the witness’s testimony.’ ”) (quoting Hammett, 908 So.2d at 597).
We direct that, on retrial, the defense shall be permitted to inquire into the father’s cocaine use on the night appellant allegedly molested C.V.

Conclusion

We reverse appellant’s convictions because of the prosecutor’s improper closing argument and remand for a new trial consistent with this opinion.

Reversed and Remanded.

MAY, C.J., and CONNER, J., concur.

. There were several prosecutorial comments that were not objected to below, but which appellant challenges on appeal. We need not address the propriety of the unobjected-to remarks, as the comments made over objection are egregious enough to warrant reversal of appellant’s convictions. Nonetheless, we caution the prosecution to avoid any arguments on retrial that could be construed as ridiculing the defense, making improper appeals to sympathy, or shifting the burden of proof.

. However, the Hudson court found the error harmless because 1) the prosecutor made only a single reference to the word "pedophile” in closing, 2) the defendant made a highly incriminating statement to the victim's grandfather that he had "just used [his] finger to her,” and 3) there was physical evidence that corroborated the victim's testimony. 820 So.2d at 1072.

. In Florida, scientific-expert testimony that an alleged victim of sexual abuse exhibits symptoms consistent with one who has been sexually abused may not be used in a criminal prosecution for sexual abuse, as such testimony currently does not pass the Frye test. See Hadden v. State, 690 So.2d 573, 580-81 (Fla.1997) (a psychologist’s opinion that a child exhibits symptoms consistent with what has come to be known as "child sexual abuse accommodation syndrome” (CSAAS) may not be used in a criminal prosecution for child abuse, as it has not been proven to be generally accepted by a majority of experts in psychology). However, the Fiye standard "is not applicable to an expert's pure opinion testimony which is based solely upon the expert’s training and experience." Id. at 579-80. Thus, expert testimony on typical behaviors of sexually abused children is admissible in a sexual battery prosecution where it is based on the expert’s training and experience, it is carefully couched solely in relation to his professional experience, and the expert does not directly testify about the victim. See Oliver v. State, 977 So.2d 673, 677 (Fla. 5th DCA 2008). Here, the state did not violate the rule in Hadden, because the state never offered scientific-expert evidence that C.V. suffered from CSAAS or posttraumatic stress disorder that was caused by sexual abuse. The par *283 ents’ testimony was essentially in the nature of factual observations. Further, their testimony that C.V.'s behavior was not caused by the father’s incarceration was in response to defense counsel's questioning, not the state’s questioning.