DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JORGE FELIX ALMARALES,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D20-1611

[June 23, 2021]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Jeffrey D. Gillen, Judge; L.T. Case No. 50-2019-CF-007061-AXXX-MB.

Carey Haughwout, Public Defender, and Ross Frank Berlin, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Richard Valuntas, Assistant Attorney General, West Palm Beach, for appellee.

ROBINSON, MICHAEL A., Associate Judge.

The appellant, Jorge Almarales ("the defendant"), appeals his conviction and sentence for two counts of lewd or lascivious molestation of a child less than twelve years of age. He contends that the court erred in overruling objections to statements made by the prosecutor in closing argument as well as restricting the defense cross-examination of a state witness. We conclude that the court erred in allowing the state to make a bolstering argument regarding the victim, which error was not harmless. We thus reverse.

By information, the state charged the defendant with two counts of lewd or lascivious molestation of N.C. ("the victim"), a child less than twelve years of age. The case proceeded to trial.

The state theorized that the defendant, a friend of the victim's family, began molesting the victim when she was six years old. The abuse occurred while he visited the victim in her home, and it continued until the victim was eight years old. At that point, the defendant abused the

victim in his home.  The defense theory was that the victim was being bullied in school because of her weight, and she fabricated the allegations of sexual abuse for attention.

The victim, who was eight at the time of trial, testified as follows.  She lives with her parents and her grandmother.  The defendant is "kinda like my grandfather."  He lived nearby, within walking distance from the victim's home.  He had spent a significant amount of time at the victim's home over the years.  She and the defendant enjoyed playing dominoes.

The victim testified that defendant began touching her over her clothing on her "private part" but over her clothing when she was six.  She told him to stop, and he did.  The defendant's wife was home when that happened, but she was in the kitchen.  He continued to touch her at other times after that, "[s]ometimes at his house, sometimes at mine," though not every time she saw the defendant.  It happened "when other people were home," but "[t]hey were doing something else."  No one ever saw it happen.

When she was seven and playing hide and seek with the defendant's grandson, the defendant directed her to "come look over here" for the grandson.  She thought he was "[t]rying to touch my private part again," but she also believed the defendant's grandson was hiding in the area where the defendant directed her to look.

She related another touching at a party for her grandmother in her backyard, when the defendant touched her under the table while she was seated between him and her mother.  She said she yelled out "stop," and her family asked her what happened.  She said that she was pinched.

The victim further testified about another incident.  The defendant was visiting at her home with her grandmother and other family members present.  The defendant "told me to sit on his lap and he started touching me again."  She sat on his lap and he touched her "the same way."  She slapped his hand away.  They went outside and the defendant again directed her to sit on his lap, so she did.  "I trusted him this time."  The defendant touched her again over her shorts.  She pushed his hand away.

The defendant and the victim then left to go to the defendant's home to play dominoes.  When they got there, he took her to his bedroom, where she had been before.  He told her to lie down, which she did.  He pulled her shorts down but not her underwear.  He pulled her shorts back on and told her to stand up; she complied.  He "grabs my butt and starts kissing me on my lips."  He kissed her with "[h]is lips . . . like adults do it."

The defendant then told her to lie on a smaller bed next to the big bed. He told her to "pull down my shorts" and "to take out a leg." She obeyed. The defendant stood in front of her and began to pull his pants down. She said loudly, "Stop, stop, what are you doing?" He told her, "I'm trying to teach you how to do the love." She suggested they play dominoes instead. The defendant was "on his knees and he got up." She put her shorts back on and they played dominoes at a table elsewhere in the house. When she returned to her house, she told her cousin what had happened. Her cousin told her to tell her grandmother which she did. The police came, but she did not tell them everything. The next day she did tell another lady everything.

On cross-examination, she admitted that she had been alone with the defendant at his home many times with her grandmother's knowledge. It was "normal" for her to sit on the defendant's lap. She attended a performing arts school, and kids bullied her at school; they "called me fat."

When she talked to the police, she told them that the charged incident was the first time this had happened, but on cross-examination she said she meant that it was the first time it happened in the bedroom.

The victim's grandmother testified as follows. The defendant was a family friend. On the day of the bedroom incident, the defendant was outside with the children for a while, left, and then came back to grab a dominoes set. He invited the victim to come play with his grandson. The victim left and came back about twenty-five minutes later. She seemed normal and ate with her cousin. After a while, the victim asked to tell her something, and the victim then related what had happened at the defendant's house. She was shocked. She never noticed anything unusual when he was over at their house. When the defendant came back to the house, the grandmother confronted him, but the defendant denied that anything happened. The grandmother did not remember any other incident, including the one where the victim yelled "stop" during a family party. She never saw the victim sit on the defendant's lap.

The officer who came to the house on the day of the incident testified but did not recall much of her questioning of the victim. She collected clothes and spoke to the adults. A child protective team case coordinator testified that she conducted a recorded interview with the child. The case coordinator's recitation of that interview was consistent with the victim's trial testimony.

A detective arranged a controlled call between the victim's father and the defendant during which the defendant denied touching the victim. The

detective then interviewed the defendant, who was 81 years old and walked with a cane. The defendant adamantly denied the incident or ever inappropriately touching the victim. He conceded that he may have inadvertently touched the victim in an inappropriate area while she was engaged in horseplay with his grandson. As to the bedroom incident, he stated that when the victim came to the house, she said she was bored. He gave her a kiss and suggested that he show her the exercises he did every day, so that she could work off her belly fat. The victim found it difficult to do them with the tight shorts on, so she took them off. The defendant told her to put her shorts back on, and then they played dominoes. The defendant readily gave a DNA sample to the detective.

The state's DNA expert testified that DNA swabs taken from the victim's mouth and lips showed one contributor, and the victim could not be excluded. The DNA expert testified that he could not exclude anyone. There was possible male DNA in the swab from the lips, but below the amount necessary to analyze.

The state rested, and the defendant did not call any witnesses. During defense closing argument, counsel questioned the victim's account:

> And think back, because some of her answers were very childlike and some of them weren't. When asked, "Why did you report this," she didn't initially say, "Because it felt very different." She said, "Because it's really inappropriate to do that to a child." Inappropriate is not an eight-year-old's word.

Defense counsel then questioned the likelihood of the victim's assertion that "she's touched in front of her family yells out no one responds," and also pointed out that the victim's grandmother's account of events did not jibe with the victim's account. Counsel then argued: "And remember again the words that she uses which are not the words of an eight-year-old. 'Well, I trusted him again.' That's not the words of an eight-year-old."

The prosecutor did not object to defense counsel's arguments. She addressed the arguments in her rebuttal closing:

> In opening statement, defense counsel told you that she imagined these allegations, that kids at school are talking about sex, that she's learning about sex at school. Ladies and gentlemen, an eight-year-old is not going to imagine allegations like this in the detail and in the manner that she explained it, an eight-year-old as smart as this child is.

4

Defense counsel lodged a "bolstering" objection, which the trial court overruled. The prosecutor continued:

> An eight-year-old is not going to be able to lay out two years of constant normalizing of sexual behavior that culminates in this experience at this house. This is not from the imagination of an eight-year-old.

After closing arguments, the jury returned a verdict of guilty on both counts in the information. The defendant was convicted and sentenced to twenty-five years in prison, adjudicated a sexual predator, and ordered a lifetime of sexual offender probation. Defendant appeals his conviction.

In his first issue on appeal, the defendant argues that the trial court erred in allowing the state to bolster the victim's testimony during closing argument by arguing that she did not have the ability to fabricate her allegations of sexual abuse due to her age, where no evidence supported the argument. We agree.

Contrary to the state's position, the argument is preserved by the defendant's objection to the prosecutor's argument as bolstering. "Improper bolstering occurs when the State places the prestige of the government behind the witness *or indicates that information not presented to the jury supports the witness's testimony.*" *Ramey v. State*, 177 So. 3d 308, 308 (Fla. 3d DCA 2015) (quoting *Spann v. State*, 985 So. 2d 1059, 1067 (Fla. 2008)) (emphasis supplied). Because the defendant contends the state was attempting to enhance the credibility of the victim by arguing facts not in evidence, bolstering was the proper objection. The issue is preserved.

"A trial court's rulings on objections to improper argument are reviewed under the abuse of discretion standard." *Petruschke v. State*, 125 So. 3d 274, 278 (Fla. 4th DCA 2013). "Where the comments were improper and the defense objected, but the trial court erroneously overruled defense counsel's objection, we apply the harmless error standard of review." *Cardona v. State*, 185 So. 3d 514, 520 (Fla. 2016).

The defendant contends the state's argument that the victim was too young to fabricate sexual abuse allegations was not supported by the evidence and that *Petruschke* requires reversal. "A prosecutor 'is prohibited from commenting on matters unsupported by the evidence produced at trial.'" *Petruschke*, 125 So. 3d at 279 (quoting *Fenster v. State*, 944 So. 2d 477, 479 (Fla. 4th DCA 2006)). "Closing argument must be

confined to record evidence and reasonable inferences from that evidence." *Id.*

In *Petruschke,* the appellant was convicted of lewd and lascivious molestation of a three-year-old boy. *Petruschke,* 125 So. 3d at 277. At trial, the child victim testified. *Id.* at 278. During closing argument, the trial court sustained defense counsel's objection to the prosecutor's argument that a three-year-old does not have the capacity to fabricate allegations of sexual abuse. *Id.* at 279. However, the court denied the motion for mistrial and then ruled that the prosecutor could argue that a three-year-old does not have the mental ability to fabricate allegations of sexual abuse. *Id.*

On appeal, our court rejected the state's argument that the prosecutor's comments amounted to a fair inference from the evidence, reasoning that "[t]here was absolutely no evidence presented at trial that a three-year-old child lacks the mental ability to fabricate allegations of sexual abuse." *Id.* Instead, "[t]he prosecutor simply invented this claim in closing argument." *Id.* We opined that it "might be permissible for a prosecutor to argue that a child of three would be unlikely to fabricate allegations of sexual abuse out of self-interest," but we recognized that "there was no evidence to support a blanket assertion that a three-year-old lacks the ability to fabricate allegations of sexual abuse." *Id.* The court also observed that the child's allegations were not made spontaneously, but rather in response to questioning by an adult, and "there was no evidence presented at trial that a three-year-old child lacks the mental ability to fabricate allegations of sexual abuse in such circumstances." *Id.* The court found the prosecutor's comment was improper where it was unsupported by evidence and not a reasonable inference from the evidence. *Id.*

The state argues that *Petruschke* is distinguishable, as the prosecutor in that case repeatedly referred to the defendant as a pedophile during closing arguments and argued that the victim lacked the mental capacity to fabricate sexual abuse allegations. However, these differences are of no significance. Although other improper arguments were made in *Petruschke,* and the court found cumulative error warranted a new trial, the opinion does not indicate the improper argument regarding fabrication was not, standing alone, sufficient to warrant a new trial. Additionally, our court's holding turned on whether any evidence supported the argument.

While the prosecutor in this case did not expressly argue that an eight-year-old does not have the capacity or mental ability to fabricate sexual abuse allegations, the prosecutor essentially said as much. The

prosecutor suggested that any eight-year-old could not come up with the detail supplied by the victim in this case. There was no evidence at trial to support such an assertion, and it was not a reasonable inference from the evidence. The prosecutor went beyond the evidence and asserted that children of the victim's age do not have the knowledge necessary to fabricate the sort of allegations involved in this case.

The state also asserts that the argument was fair response to the defense opening statement and to the defense argument that the victim's testimony was fabricated because the words she used "were not the words of an eight-year-old." But that is a matter that is arguably within the realm of common experience. Moreover, if the state believed that defense counsel's arguments were improper, the state should have objected. It did not give the prosecutor the right to argue matters not in evidence.

We agree with the defendant that this error was not harmless beyond a reasonable doubt. The state's case hinged on the victim's testimony, which was not confirmed by any eyewitnesses or physical evidence. The defendant adamantly denied the allegations. Under these circumstances, the prosecutor's bolstering of the victim through facts not presented in evidence cannot be considered harmless. In sum, the state's argument was improper and harmful and requires reversal for a new trial.

The defendant additionally contends that it was error for the prosecutor to argue to the jury that the defendant engaged in "grooming" the victim over two years, which also required expert evidence, a point the defendant made in a motion in limine filed prior to trial. The prosecutor was told by the judge and consequently agreed to not use the word "grooming" during her opening statement. While the prosecutor did not use the term "grooming," she did argue during closing, in response to the defense's argument, that the defendant was "normalizing" the sexual behavior, which we conclude was using a different term to articulate the same concept. Although there is no Florida authority on point, at least one other court has recognized that "grooming evidence typically requires expert testimony." *See State v. Atkins*, 315 P.3d 868, 878 (Kan. 2014). We need not decide this issue, however, because the defendant failed to preserve the issue with a timely objection. The objection of "improper argument" that he did make does not appear to us to be directed to the "normalizing" argument but, rather, to other comments made by the prosecutor that the defendant did not "pick his victim right."

As to the remaining issues, we affirm without further discussion, finding that the issues are either meritless or harmless beyond a reasonable doubt.

7

For the foregoing reasons, we reverse and remand for a new trial.

*Reversed and remanded for new trial.*

WARNER and ARTAU, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**